EX PARTE ARTHUR A. HUNN.—No. 40660.

EX PARTE MELVIN LEE LEVAN.—No. 40671.—207 S. W. (2d) 468.

Court en Banc, January 12, 1948.

*Stanley R. Schuchat, Floyd D. Stewart, Paul J. Kaveney, Richard M. Stout, J. Jules Brinkman, Wiley, Craig & Armbruster, Robert A. Roessel, Raymond M. Freed,* and *Bartley & Bartley* for petitioners.

258

260

*Stanley Wallach* for respondent.

*Harry C. Clark* for the Congress of Industrial Organizations, amicus curiae.

*Clif Langsdale* and *Clyde Taylor* for Missouri State Federation of Labor, amicus curiae.

[468] CLARK, J.—These cases, although slightly differing in their facts, pose the same legal questions and will be disposed of in one opinion. Each petitioner filed a separate application in this court for a writ of habeas corpus, alleging that he is being illegally deprived of his liberty; one by the Sheriff of St. Louis County, the other by the Sheriff of St. Louis City. Our writs were issued and each respondent sheriff has made return thereto showing that each petitioner is being held on a warrant issued upon an information charging violation of Section 8 of Senate Committee Substitute for Senate Bill 79, Laws of 1947, (Mo. R. S. A., Sec. 10178.208, pocket parts for September, 1947) commonly called the Madison Act.

Extensive briefs have been filed and oral arguments made for both petitioners. No oral argument was made for either respondent and no brief has been filed for respondent in the LeVan case.

Section 8 of the Madison Act reads as follows: "If any employee, [469] any representative of employees or officer or agent of a representative of employees shall participate in any combination or agreement of employees to cease performing any services for an employer, or to refuse to handle, install, use or work on particular materials, equipment or supplies, or to cause any loss or injury to such employer or to his employees, for the purpose of inducing or compelling such employer to refrain from doing business with or handling the products of any other employer, or if any person shall picket, or induce others to picket, the establishment, employees, supply or delivery vehicles, or customers of anyone engaged in business, or interfere with his business, or interfere with any person or persons desiring to transact or transacting business with him, when no labor dispute exists between such employer and his employees or their representatives, he shall be deemed guilty of a misdemeanor." (Laws 1947, p. 355, S. C. S. S. B. No. 79, Sec. 8.)

The information filed by the prosecuting attorney charged Hunn as follows: "On the 11th day of September, in the year 1947, in the County of St. Louis, and State of Missouri, one Arthur A. Hunn who was not in the employ of the said Samuel D. Caldwell, did then and there knowingly, wilfully and unlawfully picket the premises of Samuel D. Caldwell, located at 3200 McKibbon Road, St. Louis, County, Missouri, when there was no labor dispute existing between the said Samuel D. Caldwell and the said Arthur A. Hunn, or any employees of the said Samuel D. Caldwell, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State."

The information charged LeVan as follows: "On the 15th day of September, 1947, not being then and there an employee of or a representative of any of the employees of Adolph Merdinger doing business as Rex Barber Shop, did then and there knowingly, wilfully and unlawfully picket the premises of Adolph Merdinger, doing

business as Rex Barber Shop, located at 205 North Seventh Street, St. Louis, Missouri, by walking up and down on the public sidewalk in front of said premises carrying an umbrella upon which the following language appeared: 'This shop is non-union, Barbers' Union, Local 102, affiliated with A. F. of L.,' when there was no labor dispute existing between the said Melvin L. LeVan and the said Adolph Merdinger, doing business as Rex Barber Shop, or any of the employees of the said Adolph Merdinger in violation of Section 8, of Senate Committee Substitute for Senate Bill 79, of the 64th General Assembly of the State of Missouri, and particularly that portion of it reading as follows: '. . . or if any person shall picket, or induce others to picket, the establishment, employees, supply or delivery vehicles, or customers of anyone engaged in business, or interfere with his business, or interfere with any person or persons desiring to transact or transacting business with him, when no labor dispute exists between such employer and his employees or their representatives' contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

It is apparent that the information in each case is grounded upon the following portion of Section 8: ". . . or if any person shall picket, . . . when no labor dispute exists between such employer and his employees or their representatives, he shall be guilty of a misdemeanor."

Petitioners attack Section 8 as being a denial of the right of free speech as guaranteed by the United States Constitution (Amendment I, and Section 1 of Amendment XIV) and by the Missouri Constitution (Sections 8 and 10 of Article I). The attack is directed to the entire section, but we confine our discussion to that portion of the section which we have last quoted and which is the only portion relevant to the issues here presented.

Under the decisions of the Supreme Court of the United States, peaceful picketing as an incident of free speech is a constitutional right.

Carlson v. California, 310 U. S. 106, l. c. 113, 60 S. Ct. 746, 84 L. Ed. 1104: "For the reasons set forth in our opinion in Thornhill v. Alabama, supra, publicizing the facts of a labor dispute in a peaceful [470] way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a State."

A state may prescribe reasonable regulations as to the manner of picketing. "A State is not required to tolerate in all places and all circumstances even peaceful picketing by an individual." (Bakery Drivers Local v. Wohl, 315 U. S. 769, l. c. 774.) But a state is without power to ban peaceful picketing by an individual

on the sole ground that no labor dispute exists between the picket and the establishment picketed.

A. F. of L. v. Swing, 312 U. S. 321, 1. c. 325, 61 S. Ct. 568, 85 L. Ed. 855; ''We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

''Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Steel Foundries v. Tri-City Council, 257 U. S. 184, 209.* The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ.''

Bakery Drivers Local v. Wohl, 315 U. S. 769, 1. c. 774, 62 S. Ct. 816, 86 L. Ed. 1178: ''So far as we can ascertain from the opinions delivered by the state courts in this case, those courts were concerned only with the question whether there was involved a labor dispute within the meaning of the New York statutes, and assumed that the legality of the injunction followed from a determination that such a dispute was not involved. Of course that does not follow: one need not be in a 'labor dispute' as defined by state law to have a right under the Fourteenth Amendment to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive.'' (See also: Cafeteria Union v. Angelos, 320 U. S. 293, 64 S. Ct. 126, 88 L. Ed. 58, Thornhill v. Alabama, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093.)

 Section 8 of the Madison Act does not regulate picketing. It purports to abolish the right, not the abuse, of free speech as an incident of picketing unless a labor dispute exists. Nowhere does the Act define the term ''picket'' or ''picketing.'' As said in Thornhill v. Alabama, 310 U. S., 1. c. 100, ''The vague contours of the term 'picket' are nowhere delineated,'' then in a footnote the opinion gives seven definitions of the term, some imputing peacefulness and some violence. A penal statute creating a new offense must

be sufficiently clear to inform those subject to it what conduct on their part will render them liable to its penalties. [Connally v. General Construction Co., 269 U. S. 385.]

█ Each information here charges "picketing" by one person only. No conspiracy is alleged, nor any violence, or conduct even remotely tending to produce disorder. It is not stated that any damage, or even inconvenience, has resulted or will result to the establishment picketed. It is not charged that either petitioner made or displayed any false statement. In the Hunn [471] case the information does not charge him with making any statement, oral or otherwise. LeVan is charged with walking on the public sidewalk in front of certain premises carrying an umbrella upon which appeared "This shop is non-union." If true, that statement, unaccompanied by any illegal conduct, could be displayed upon a billboard, published in a newspaper or made by any individual without fear of punishment, regardless of the existence or non-existence of any labor dispute. The informations substantially follow the language of the statute, but the statute, in so far as it attempts to forbid any and all picketing when no labor dispute exists, is unconstitutional and void.

█ That portion of the statute is void also because it is not authorized by the title of the Act, which is: "An Act to provide for the settlement of jurisdictional labor disputes and disputes over labor representation; to prohibit jurisdictional strikes, sympathy strikes, secondary boycotts and strikes against government and to provide penalties for violation of this act; to require and regulate elections among members of labor organizations with respect to any strike; to provide for the enforcement of working agreements or contracts between employers and labor orgainzations; to provide for the enforcement of the provisions of this act, and to provide for the payment of expenses for administration of this act." (Laws 1947, p. 355, S. C. S. S. B. No. 79.)

The title does not mention "pickets" or "picketing." It descends to particulars indicating that the things specifically mentioned comprise the entire subject of the Act. Even if we could hold the title broad enough to include the subject of picketing in connection with the things mentioned, there is nothing in the title to give notice that the Act makes all picketing a crime in the absence of a labor dispute. (Mo. Const. Sec. 3, Art. XXIII; State ex rel. v. Smith, 353 Mo. 807, l. c. 819, 184 S. W. (2d) 593.)

█ For the reasons stated, we hold that each petitioner is being illegally restrained and we hereby order that each petitioner be discharged. All concur.