SAMUEL D. CALDWELL, LUCILLE L. CALDWELL, His Wife, and GORDON W. CALDWELL, Appellants, v. WILLIAM H. ANDERSON, ARTHUR HUNN, ROY A. KREHMEYER, and JOHN T. MEINERT.—No. 40597. —212 S. W. (2d) 784.

Division One, June 14, 1948.

Rehearing Denied, July 12, 1948.

*Herbert W. Ziercher* and *Erwin Tzinberg* for appellants.

*Robert A. Rossel, Raymond M. Freed, Malcolm L. Bartley.* and *William H. Bartley* for respondents.

[784] BRADLEY, C.—Action for an injunction to enjoin picketing of plaintiffs' construction project and for $10,000 damages. At the close of plaintiffs' case the trial court directed a verdict for defendants and plaintiffs appealed.

The facts in the main were agreed upon at a pretrial conference. Plaintiffs (appellants) are the owners of lots 1 to 118, both inclusive, of Belridge, a subdivision in St. Louis County, and began the development of the subdivision by erecting dwelling houses along the east side of McKibbin Road. At the time this cause was filed (February 24, 1947) plaintiffs had finished 3 houses and had 14 under construction. The 3 finished houses were occupied by plaintiffs and J. R. Wedbin who had theretofore purchased lot 119. The plan was to eventually build a house on each of the 119 lots. The 14 unfinished houses were in various stages of construction when the suit was filed. The houses sold for $8,826, and all sales up to the time of the trial (May 6, 1947) had been to veterans of World War II. Defendants (respondents) are officers and agents of the Building and Construction Trades Council of St. Louis, which is affiliated with the American Federation of Labor.

In St. Louis and St. Louis County about 95 percent of the labor employed in construction work is union labor. Plaintiffs employed only nonunion labor on their construction project. It is the custom and practice of the Building and Construction Trades Council to endeavor to prevail upon all employers in the construction industry to enter into written contracts with said Council to employ union labor only.

1202

Defendants [785] Krehmeyer and Meinert and other union representatives, before picketing was commenced, called upon plaintiff Samuel D. Caldwell on several occasions and requested that plaintiffs enter into such contract, but they refused to do so. After such refusals and on May 28, 1946, said Council placed pickets at plaintiffs' project. These pickets walked in the public street in front of the project carrying umbrellas bearing the legend that plaintiffs were unfair to said Council, and for awhile one of the pickets carried an umbrella bearing the legend that plaintiffs were unfair to the International Brotherhood of Electrical Workers, Local No. 1, affiliated with said Council.

After picketing commenced union labor members refused to cross the picket line, and as a result plaintiffs were unable to secure delivery of materials, and were unable to secure installation of gas and electricity in the houses constructed. Plaintiffs, however, were able to carry on so far as getting materials. They did this by purchasing the necessary equipment and doing their own hauling. This caused plaintiffs "much inconvenience and some delay in the construction of their houses." When a house was sold and occupied by the purchaser the pickets were withdrawn from such house and gas and electric installation could then be obtained. All the picketing was peaceful; there was not at any time any violence. The contract would have required plaintiffs (1) to employ only workmen affiliated with the American Federation of Labor "and members of a subordinate local union of that body in this vicinity"; and (2) to require all subcontractors to employ union workmen affiliated with the American Federation of Labor and members of the local in the vicinity. The contract would have required the Council to furnish plaintiffs "a sufficient number of competent workmen."

Plaintiffs make two principal contentions, namely, that defendants entered into a conspiracy in restraint of trade in violation of Sec. 8301 R. S. 1939, Mo. R. S. A., Sec. 8301, and that there was no labor dispute between the pickets and the picketed, and that therefore the picketing was unlawful.

As supporting the contention that defendants entered into a conspiracy in restraint of trade, plaintiffs cite said Sec. 8301; Rogers v. Poteet et al., 355 Mo. 986, 199 S. W. (2d) 378; Bedford Cut Stone Co. et al. v. Journeymen Stone Cutters' Assn. et al., 274 U. S. 37; 47 S. Ct. 522, 71 L. Ed. 916; Purcell v. Journeymen Barbers, etc., Union et al., 234 Mo. App. 843, 133 S. W. (2d) 662; Lohse Patent Door Co. v. Fuelle et al., 215 Mo. 421, 114 S. W. 997. It is admitted that the purpose of the picketing was to force appellants to contract with the Council to employ only those persons belonging to union organizations affiliated with the Council and to agree to employ only union subcontractors. It is further admitted that members of all unions affiliated with the American Federation of Labor recognized and refused to cross the picket line. In the Rogers case the court

said [199 S. W. (2d) 1. c. 386] : "An actionable conspiracy . . . . may have two aspects: it may consist of an executed agreement either to do an unlawful act, or to do a lawful act in an unlawful manner, whereby the plaintiff is damaged. And so, here, even though the appellants were not guilty of violence, threats, intimidation, malice or breach of contract, and conceding they might have done as individuals all that they did do, yet when *all* the union members at *all* the milk plants in the area confederated to reject the milk, the action was conspirative, if the respondent's milk hauling business thereby would have been destroyed."

But the present facts are quite different from those in the Rogers case. As appears, it is admitted in the present case that all union members whose union is affiliated with the American Federation of Labor refuse to cross a picket line, and as appears, it is admitted that it was the policy of the Building and Construction Trades Council to endeavor to prevail upon all employers in the construction industry to employ union labor only. From these admissions and the contract sought by defendants as to employment of union labor only, plaintiffs deduce that defendants entered into a conspiracy, the result of which was restraint of trade denounced by Sec. 8301. These admissions and the sought contract do not establish conspiracy. There [786] was nothing unlawful agreed upon or done, and the sought contract was not unlawful. The trouble with plaintiffs' case is that the facts do not establish a conspiracy, hence the statute and the cases they cite do not help their case.

■ In connection with plaintiffs' effort to establish a conspiracy they complain because the trial court excluded evidence of witness Mohan relative to threats of a secondary boycott. Mohan was associated with and was secretary of the Majestic Building Materials Corporation which sells sand, gravel, cement blocks, etc., at retail. Plaintiffs were customers of this company and purchased from them concrete and cinder blocks for their building project. Mahon said that a man by the name of Bodeker, connected with the chauffeurs' union, visited him and made certain threats. When asked how he knew that Bodeker was connected with the chauffeurs' union he said that at the various times Bodeker called he gave us "cards for the new employees going into the local." Then he was asked if Bodeker had any conversation with him about "the Caldwell project." Objection was made on the ground that the only evidence offered of Bodeker's authority to speak for the union was "his own acts and declarations", and that no union member had the right to "bind the others by his acts unless there was some showing that the man was acting on a particular matter with the knowledge or consent, implied or actual, of the defendants on trial. If otherwise, anybody of the some 20,000 members of this Council could go out and bind us with their actions. I think it is pure hearsay." It was admitted that

the chauffeurs' union was affiliated with the Building and Construction Trades Council. The objection was sustained and plaintiffs offered to prove by Mahon that Bodeker "came to him in the latter part of December 1946, or the early part of January 1947, and stated that if the Majestic Building & Materials Company continued to sell the plaintiff Samuel D. Caldwell any material or supplies for his building project . . . Local 600 (chauffeurs' union) would withdraw all of its members from the work that they were doing for the Majestic Building Materials Corporation and that they would not permit their members to continue in the employ of the Majestic Building Materials Corporation." The offer was excluded.

Bodeker could not speak for the chauffeurs' union unless he had authority so to do. F. C. Church Shoe Company v. Turner et al., 218 Mo. App. 516, 279 S. W. 232, l. c. 237; Clarkson v. Laiblan et al., 202 Mo. App. 682, 216 S. W. 1029, l. c. 1033. We agree with counsel for defendants that there was not sufficient evidence to show the authority of Bodeker to speak for the chauffeurs' union and that the offering was pure hearsay. We might say that it was admitted that Mohan's company continued to do business with plaintiffs and whatever threats Bodeker may have made, none were carried out. The offered evidence was properly excluded.

■ Was the picketing unlawful as plaintiffs contend because there was no labor dispute between plaintiffs and defendants or the pickets? The recent case of Ex Parte Hunn (Mo. Sup.—banc), 357 Mo. 256, 207 S. W. (2d) 468, is in point. That case was in habeas corpus and the petitioner was defendant Hunn in the present case, and the facts involved were the facts in the present case. Hunn was charged by information of the prosecuting attorney with violating Sec. 8 of the Madison Act. Laws 1947, p. 355, Mo. R. S. A., Sec. 10178.208. Sec. 8 provides ". . . or if any person shall picket, or induce others to picket, the establishment, employees, supply or delivery vehicles, or customers of anyone engaged in business, or interfere with his business, or interfere with any person or persons desiring to transact or transacting business with him, when no labor dispute exists between such employer and his employees or their representatives, he shall be deemed guilty of a misdemeanor." The charge in the information was that "on the 11th day of September, in the year 1947, in the County of St. Louis and State of Missouri, one Arthur A. Hunn who was not in the employ of the said Samuel D. Caldwell, did then and there knowingly, willfully and unlawfully picket the premises of Samuel D. Caldwell, located at 3200 McKibbin Road, St. Louis County, Missouri, when there was no labor dispute existing between the said Samuel D. Caldwell and the said Arthur A. Hunn, [787] or any employees of the said Samuel D. Caldwell, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

The Madison Act went into effect September 9, 1947. It is stated in defendants' brief that upon the Act becoming effective all pickets were withdrawn from plaintiffs' project, and plaintiffs were again asked to enter into the contract to employ only union labor and again refused. Thereupon picketing was resumed. Upon the arrest of defendant Hunn picketing was again discontinued. It was held in Ex Parte Hunn that the provision of the Madison Act making peaceful picketing a misdemeanor was void as violative of the constitutional right of freedom of speech. Sec. 8, Art. I, Missouri Constitution; Amendment I, Constitution of the United States. Hunn was discharged from the custody of the sheriff who held him on a warrant based on the information. When the opinion in Ex Parte Hunn came down the picketing of plaintiffs' project was resumed.

Injunction will not lie to restrain the character of picketing as disclosed by the record here. Peaceful picketing, that is, picketing unaccompanied by coercion, intimidation or violence, cannot be restrained on the ground that no labor dispute or relation of employer and employee exists between the pickets and the picketed. Ex Parte Hunn, supra; Amercian Federation of Labor et al. v. Swing et al., 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855; Cafeteria Employees Union, Local 302 et al. v. Angelos et al., 320 U. S. 293, 64 S. Ct. 126, 88 L. Ed. 58; Carlson v. California, 310 U. S. 106, 60 S. Ct. 746, 84 L. Ed. 1104; Thornhill v. Alabama, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093; Bakery v. Pastry Drivers & Helpers Local et al. v. Wohl et al., 315 U. S. 769, 62 S. Ct. 816, 86 L. Ed. 1168.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.