229 S.W.2d 259 (1950)
GRUET MOTOR CAR CO.
v.
BRINER et al.
No. 27925.
St. Louis Court of Appeals. Missouri.
April 18, 1950.
Rehearing Denied May 19, 1950.
Malcolm L. Bartley, St. Louis, Bartley & Bartley, St. Louis, of counsel, for appellants.
*260 Fred J. Hoffmeister, St. Louis, Fred C. Schillinger, St. Louis, for respondent.
WOLFE, Commissioner.
This is an action in which the plaintiff corporation seeks an injunction against the business agents of two labor unions to restrain them from picketing and engaging in a boycott of its business. The trial judge found for the plaintiff and the defendants have appealed.
The petition states that the plaintiff is engaged in the business of selling new and used automobiles, parts, accessories, and a general automobile service and repair business. It is further stated that it employs fifteen persons who are not members of any union and do not desire to become members. It is alleged that the defendants, Briner and Vossmeyer, are respectively business agents of the Machinists Union, District No. 9 and the Teamsters Union Local No. 618, and that, although the plaintiff had no dispute with these unions, the defendants started picketing its place of business. The pickets so engaged carried umbrellas with words upon them indicating that plaintiff was unfair to organized labor and to the unions that the defendants represented.
It states that the defendants have molested and interfered with plaintiff's employees and customers and that they have interfered with the transportation of supplies and merchandise to and from plaintiff's place of business. It alleges that defendants and members of the unions are engaged in a conspiracy to boycott the plaintiff's business in restraint of trade in violation of Section 8301, R.S.Mo.1939, Mo. R.S.A. § 8301, and prays that the defendants be enjoined from picketing, boycotting or otherwise interfering with plaintiff's business and contains a request for a temporary restraining order. A second count of the petition with a prayer for damages was dismissed without prejudice by the plaintiff after the conclusion of the hearing.
A temporary restraining order having been granted the defendants filed a motion to dissolve it and combined with this motion their answer to the petition in which they admitted that they were picketing the plaintiff's place of business but averred that not more than four pickets were employed at any one time. They alleged that the picketing was for the purpose of informing the public that the business was nonunion and that they at no time conspired to boycott the plaintiff's business. The answer also alleges that some time before the picketing started the defendants attempted to negotiate union contracts with the plaintiff similar to the agreements they had with other automobile dealers belonging to the Greater St. Louis Automotive Association of which plaintiff was a member, but that plaintiff declined to enter into negotiations with the unions.
The evidence offered by the plaintiff disclosed that it had a dealers contract with the Lindburg Cadillac Company of St. Louis and the Cadillac Division of General Motors. In addition to selling and servicing automobiles the company had been engaged in doing some machine shop work for the Busch-Sulzer Company and George B. Gruet, of the plaintiff corporation, was privately engaged in the sale of electrical household appliances from the corporation's place of business on McPherson Avenue in the City of St. Louis, Missouri.
Gruet testified that the defendants called upon him sometime before the picketing started to discuss the prospect of having the company employees join the unions represented by the defendants. The company employed about twenty-five persons of whom fifteen were mechanics. None of those employed belonged to any union but Gruet stated that he informed the defendants that he had no objection to the employees affiliating with a union. He stated that his employees could join or not join as they saw fit.
He testified that defendant Nelson Briner, Assistant Business Agent for the Machinists Union, came to the company's place of business one Friday evening and attempted to talk to the men as they were leaving. Gruet walked over to the place where Briner was engaging them in conversation *261 and when he did so Briner stopped talking. He said that he told Briner to continue but Briner shook his finger at him, made some inaudible comment and walked away.
The following Monday morning there were pickets in front of the place, carrying umbrellas with the word "Unfair" printed on them. The pickets walked up and down in front of plaintiff's place of business until restrained from so doing by order of the circuit court. There were usually two pickets and at times four present.
There was evidence that a driver delivering gasoline by truck to plaintiff delayed putting the gasoline into the company's tanks when he saw the pickets there. He made a phone call before he made the delivery.
Gruet testified that he was obliged to get parts needed for repairs from the Lindburg Cadillac Company, and that there was no interruption in the procurement of such parts for the first two days of the picketing, but that thereafter he was obliged to procure such parts from the Lindburg Company through another agent. There was evidence that it was the general practice of the plaintiff to send its own employee to the Lindburg Company for such parts.
The plaintiff had a large machine weighing 21,500 pounds known as a radial drill which it had sold and wanted to deliver to the buyer. A Morgan Hauling Company truck arrived one morning, to remove the machine, with several iron workers to assist the driver. The driver would not cross the picket line and testified that upon seeing the pickets present he called the business agent of his union who instructed him not to cross the line.
During the war years and thereafter plaintiff was doing work for the Busch-Sulzer Company. It had no work for the company at the time of the picketing. The manager of Busch-Sulzer stated that its shop steward representing members of the Mechanics Union working in its shop informed him that no more work could be sent to the Gruet Motor Company because it had been "pulled".
Another incident related by plaintiff's witnesses had to do with the pick up and delivery of appliances from the Frigidaire Sales Corporation. Its manager said that deliveries to Gruet were not stopped but after a phone call he received from the Carondelet Transfer Company which handled Frigidaire's drayage no appliances were transported by the transfer company from the Gruet Company.
Gruet stated that several customers complained about the pickets and one customer testified that he had heard the pickets say that the Gruet Company was "unfair" and ask "Why do you patronize such a concern?"
The defendant Briner testified that he had called upon Gruet to ask permission to organize the men in the company's shop and that Gruet had informed him that the matter of organization was up to the men. A later call was made by Briner and Gruet stated that he was not interested. After that Briner stopped some of the men on the sidewalk as they were quitting work for the day and sought to persuade them to join his union. As he was talking to them Gruet appeared in the door with the apparent intention of listening. Briner thought that the men would not feel free to talk in Gruet's presence so he walked away. According to him this took place on Wednesday evening and on the following Monday the place was picketed.
Vossmeyer of the Teamsters Union had talked to Gruet about ten months or a year before the picketing took place. The defendants maintain that the purpose of picketing was to inform the public that the plaintiff's shop was nonunion. It was stated that the plaintiff belonged to an association of automobile dealers; that the unions had negotiated a form of contract which was acceptable to the association and that ninety per cent of the association members had signed the contract and were union shops.
After the second day of picketing the umbrellas carried by the pickets were changed so that the signs upon them read "nonunion" instead of "unfair". It was stated that some of the pickets made a note of the automobile license numbers of Gruet's patrons. This was done, it was *262 said, with the intention of phoning the owner of the automobile in order to explain the unions' cause but no such phone calls were made.
The defendants' evidence regarding the various incidents complained of by the plaintiff is that those who refused to cross the picket line did so of their own volition and not because of any agreement with or coercion by the defendants.
They stated that they informed the Lindburg Company that they had placed a picket line in front of the Gruet Company's place and did not want any of their men to cross the line but they were informed by the Lindburg Company that it had a contract whereby it was obliged to furnish parts to the Gruet Company. A manager for the Lindburg Company told them that if the Gruet Company wanted parts it would be obliged to furnish them and according to the defendants that ended the conversation. They said that nothing was done to prevent the Gruet Company from getting the parts it needed.
Defendants testified that nothing was done by them or by the pickets to prevent or dissuade the driver for the Morgan Hauling Company from loading the radial drill. The driver also testified to the same effect, stating that he refused to load the drill because he did not believe in crossing picket lines.
Defendants admitted that they had called at the office of the Carondelet Transfer Company which made deliveries for the Frigidaire Sales Corporation. They stated that they went to the office of the company and talked to some one there because they had heard that there had been some trouble with the picket line and a Carondelet Transfer Company driver.
As for the statement of the shop steward at Busch-Sulzer Company the defendants testified that the sole function and authority of the steward was to represent the union men in a particular shop and that he was without authority to tell the manager that no more work could be sent to Gruet. The defendants also testified that they did not know that the incident had occurred and that it was wholly unauthorized.
At the conclusion of the defendants' testimony their counsel made the statement that although the defendants contended and were still maintaining that they had done nothing more than peacefully picket the plaintiff's business, yet if the court believed the contrary they renounced (1) any present or future intention to display signs or make statements indicating that the plaintiff was unfair to their unions; (2) any picketing of any nature as long as the Madison Act, Laws 1947, p. 351, was in effect; (3) any intention of coercing others to stop doing business with the plaintiff; (4) any intention of picketing for the purpose of compelling plaintiff to encourage or force its employees to join the unions against their will. It was stated in the renunciation that the sole purpose of any picketing would be to inform the public that the plaintiff's business and employees were nonunion if the restraining order was lifted.
The court made its findings of fact and conclusions of law and then entered a decree restraining the defendants from declaring that the plaintiff was unfair to the defendants' unions and further restraining them from establishing any picket line about plaintiff's place of business which would affect or interfere with the receipt of merchandise, etc. The defendants were further restrained from engaging in or encouraging others to engage in a boycott of plaintiff's business and from interfering with the plaintiff's business or persons with whom the plaintiff had business dealings and from conspiring among themselves or with other persons for the purpose of interfering with others conducting business with the plaintiff.
From the decree an appeal was taken to the Supreme Court which ordered the appeal transferred to this court, holding that no constitutional question had been properly presented and that by reason of that appellate jurisdiction was in this court. Gruet Motor Car Co. v. Briner et al., Mo. Sup., 224 S.W.2d 73.
Plaintiff's action is based on Section 8301, R.S.Mo.1939, Mo.R.S.A. § 8301, which is as follows: "Any person who shall create, enter into, become a member of or participate *263 in any pool, trust, agreement, combination, confederation or understanding with any person or persons in restraint of trade or competition in the importation, transportation, manufacture, purchase or sale of any product or commodity in this state, or any article or thing bought or sold whatsoever, shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and shall be punished as provided in this article."
The court found that the evidence disclosed a conspiracy prohibited by the statute and bottomed its injunction on that finding. It is the contention of the defendants that the injunction was erroneously granted because there was no evidence upon which the court could find that they had conspired in violation of the statute, or that they were picketing for an unlawful purpose.
In viewing the evidence to determine whether or not the acts of the defendants constituted a prohibited conspiracy or boycott it may be well to first review the settled law as to the right of the defendants to peacefully picket plaintiff's business. Under the guarantee of freedom of speech a labor union has the right to publicly state its grievance by picketing where such picketing is not en mass or otherwise conducted in such a manner as to go beyond the point of peaceful persuasion, and this is true even though those picketing do not stand in the relation of employee to the party picketed. A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Ex parte Hunn, 357 Mo. 256, 207 S.W.2d 468; Caldwell v. Anderson, 357 Mo. 1199, 212 S.W.2d 784. It is equally true that one may exercise a free choice as to whom he will do business with or from whom he will withhold his patronage providing his action in exercising his choice is not motivated by a prohibited conspiracy with others. It follows that if the patrons or companies that had previously done business with the Gruet Company, by their own free choice, did no longer deal with the company, after it had been publicized by the pickets that the company was nonunion, then such action is not a conspiracy. The purpose of picketing is to persuade such patrons to the union's cause and the right to picket is not lost because its purpose becomes effective.
The evidence must be weighed to determine whether or not defendants went beyond the confines of their rights and entered into a conspiracy or engaged in a secondary boycott as the plaintiff charges. The difficulty presented is the problem of determining the point at which lawful persuasion turns to coercion. Three of the more recent cases upon which the plaintiff relies are Rogers v. Poteet, 355 Mo. 986, 199 S.W.2d 378; Wolferman, Inc. v. Root et al., 356 Mo. 976, 204 S.W.2d 733; and Empire Storage & Ice Co. v. Giboney et al., 357 Mo. 671, 210 S.W.2d 55.
Rogers v. Poteet had to do with the attempted boycott of nonunion milk haulers who collected milk from the producers daily and delivered it to the various processing plants in Kansas City. The union "confederated" to reject the milk delivered by these drivers at all of the milk plants which constituted the only outlet for their product. This meant that such drivers' business would have been destroyed. The court held that the defendants were properly enjoined by the chancellor but they should not be restrained from peaceful picketing and persuasion. It may be seen that the case differs considerably from the one under consideration, for there is no contention that the plaintiff here was deprived of any of the essentials for the conduct of its business.
In Wolferman, Inc. v. Root et al. a picket line was established by a butchers union and threats were made to put the plaintiff out of business. It was a "recognized" picket line which meant one sanctioned by the Central Trades Council. This cut off supplies and deliveries to the plaintiff. About the same resulting situation was presented as that in the case of Rogers v. Poteet and to that extent it differs from the case under consideration. It differs further in that the court dwelt at some length on the fact that the defendants had at no time renounced unlawful intentions. The defendants here have renounced any intention "present or future, of coercing other persons to cease doing business with *264 the plaintiff or to stop supplying plaintiff with parts and supplies, merchandise, or to refuse to deliver the same either to or from the plaintiff's premises. They state that if, in the event any such act as that or result as that should occur, it will be due to the free, unsolicited and voluntary act of the persons supplying, the person delivering of the person doing business with the plaintiff."
It is stated in 43 Corpus Juris Secundum, Injunctions, paragraph 196 page 906: "As a general rule an injunction will be denied where the defendant denies intent to continue the acts sought to be enjoined and there is nothing to show the falsity of his denial."
This court stated in Commission Row Club v. Lambert, Mo.App., 161 S.W. 2d 732, loc. cit. 736: "The court cannot grant an injunction to allay the fears and apprehensions of individuals. They must show the court that the acts against which they ask protection are not only threatened, but will in all probability be committed, to their injury."
It may be seen from both of the above quotations that where a sincere renunciation of any intent to commit the act complained of is made, equity should not restrain where no irreparable harm would ensue if the renouncing party later pursued the conduct that he had renounced.
The other case, Empire Storage & Ice Co. v. Giboney et al., 357 Mo. 671, 210 S. W.2d 55, is clearly a case of secondary boycott. There the union picketed an ice plant to compel it to stop the sale of ice to nonunion ice peddlers. Because of the picket line all deliveries were stopped to and from the plant. The difference between the facts in that case and the present one is so evident that a discussion of it would serve no purpose.
A late case, Caldwell et al. v. Anderson et al., 357 Mo. 1199, 212 S.W.2d 784, 785, appears closely analogous to the case under consideration. There the evidence disclosed that ninety-five per cent of the construction labor employed in St. Louis and St. Louis County was union labor. It was the custom of the Building & Construction Trades Council to endeavor to prevail upon all employees in the construction industry to enter into written contracts with said council to employ union labor only. After the plaintiffs refused to enter into such a contract their business was picketed by pickets walking in front of their construction projects carrying umbrellas with signs stating that the plaintiffs were unfair to the council and unfair to the International Brotherhood of Electrical Workers. "After picketing commenced union labor members refused to cross the picket line, and as a result plaintiffs were unable to secure delivery of materials, and were unable to secure installation of gas and electricity in the houses constructed. Plaintiffs, however, were able to carry on so far as getting materials. They did this by purchasing the necessary equipment and doing their own hauling." The plaintiffs contended that the acts set out constituted a conspiracy but the court held that there was no evidence that the defendants had gone beyond their constitutional rights.
There was evidence that a union man named Bodeker, who at various times gave out cards to new employees at the Majestic Building Materials Corporation, called on that company, which did business with the plaintiffs. The secretary of the company sought to testify concerning a conversation he had with Bodeker but there was an objection to the testimony on the ground that there was no showing that Bodeker was acting on behalf of or with the consent of the defendants. When this objection was sustained, plaintiffs offered to prove "that Bodeker `came to him in the latter part of December, 1946 * * * and stated that if the Majestic Building & Materials Company continued to sell the plaintiff Samuel D. Caldwell any material or supplies for his building project * * * Local 600 (chauffeurs' union) would withdraw all of its members from the work that they were doing for the Majestic Building Materials Corporation and that they would not permit their members to continue in the employ of the Majestic Building Materials Corporation.'" The court held that the trial court properly excluded the evidence and that Bodeker could not speak for the chauffeurs' *265 union unless he had authority to do so. The same situation was presented in this case in relation to the statement of the shop steward of the Busch-Sulzer plant. What he said was of no probative value for all of the evidence indicated his statements were unauthorized and not condoned in any way by the defendants.
In the Caldwell case the court sustained the trial court's refusal to grant the injunction. The facts there more strongly favored the plaintiffs than those under consideration, and if the acts complained of there were not improper neither are the acts of these defendants. In that case the delivery of all supplies was cut off but here the Gruet Company got the parts needed for its business. Why it did not get them from the Lindburg Company is not clear. There is no evidence that it sent for parts, as was its custom, and that the Lindburg Company refused to sell it parts. In fact the defendants' evidence that the manager of the Lindburg Company stated it would continue to sell parts to Gruet stands uncontradicted.
It is true that the court might well have questioned the intention of the defendants in taking down the license numbers of the cars driven by the plaintiff's patrons. The stated but unexecuted intention in doing this was to call up the owner of the car to explain the union cause. The more obvious reason appears to be that it was an effort to create the impression that the patron was watched and his conduct noted for some undisclosed purpose. While not to be condoned such minor incidents as these do not rise to the point of coercion or intimidation.
Viewing all of the evidence and considering the renunciations of the defendants, it appears that the plaintiff failed to present sufficient proof to sustain its charges of conspiracy or to bring the defendants' acts within the scope of Section 8301 and the injunction was therefore erroneously issued.
This case was finally submitted to the court on November 17, 1947, and on March 15, 1948, the court permitted the plaintiff to dismiss count two of its petition without prejudice. It is contended that the court erred in so doing. Section 99, Laws of 1943, p. 353, Sec. 847.99, Mo. R.S.A., provides in part: "(a) A plaintiff shall be allowed to dismiss his action without prejudice at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterward." Count two alleged that plaintiff had been damaged by the acts of the defendants but plaintiff offered no proof of damages. After a full hearing and final submission the defendants were entitled to a final determination of the case. As will be seen the statute allows dismissal without prejudice at any time before submission "and not afterward". Section 101 of the Code, Sec. 847.101, Mo.R.S.A., provides that any voluntary dismissal which plaintiff is not entitled to take without prejudice shall be with prejudice. The order was therefore erroneous and when the plaintiff expressed its desire to dismiss, a dismissal with prejudice should have been entered.
It is the recommendation of the Commissioner that the order dismissing Count two without prejudice be reversed and that Count two of plaintiff's petition be and stand dismissed with prejudice. It is further recommended that the decree of the trial court be reversed and the injunction against the defendants dissolved.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
Count two of plaintiff's petition stands dismissed with prejudice and the decree is reversed and the injunction against defendants dissolved.
ANDERSON, P. J., and HUGHES and McCULLEN, JJ., concur.