249 S.W.2d 166 (1952)
KATZ DRUG CO.
v.
KAVNER et al.
No. 42506.
Supreme Court of Missouri, Division No. 1.
May 12, 1952.
*167 Harry H. Craig, Wiley, Craig & Armbruster, St. Louis, for appellants.
Paul R. Stinson, Lawrence R. Brown, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.
LOZIER, Commissioner.
Defendants appeal from a decree enjoining them from picketing and distributing literature in or about plaintiff corporation's stores and warehouses and from interference of any kind with plaintiff's property rights or business by intimidation, threats, menace or force. The appeal is properly here because of defendants' contention that the decree violates their constitutional rights. The primary questions are: Where the manner and one purpose of picketing were lawful and other initial unlawful purposes were "renounced" by the defendants, should the injunction have been issued? Was the decree's language too broad?
Plaintiff operates retail drug and general merchandise stores in Missouri, Kansas, Iowa and Oklahoma. Merchandise is delivered to the stores by vendors or trucked by plaintiff from its one warehouse at North Kansas City, Mo. Five of the stores are in St. Louis County and the City of St. Louis. Plaintiff's employees in the Kansas City area are "unionized." Those in the St. Louis area are not. No differences existed between plaintiff and the latter employees as to wages, hours or work conditions and there was no labor dispute.
*168 Defendants are officers, agents and representatives of an unincorporated labor union, Local No. 688, Warehouse and Distribution Workers Union, A.L.F., St. Louis, Mo. It was conceded that the defendants and the union did not represent a majority of plaintiff's St. Louis area employees; and that, in the conversations hereinafter mentioned, defendants admitted that they represented only 34 out of approximately 400.
On December 8, 1950, defendants set up picket lines around the North Kansas City warehouse, and several of the stores in Kansas City, Mo., Kansas City, Kan., the City of St. Louis and St. Louis County. The pickets carried these signs: "Katz Drug Co. is nonunion in St. Louis, Local No. 688, St. Louis." The picketing was "peaceful," unaccompanied by intimidation, threats or violence. However, customers and union drivers refused to cross the picket lines. Deliveries to the stores from the warehouse and deliveries by vendors (including daily deliveries of perishables) ceased. In a few hours, the stores were out of some items, and in a few days would have been out of others. Plaintiff's uncontradicted evidence was that it sustained and would continue to sustain substantial damage. The record supports the trial court's finding that the picketing resulted "in paralyzing and destroying plaintiff's business at the height of its Christmas season business." In this court, the parties appear to agree that the picketing, whatever its purpose, was "effective." See Gruet Motor Car Co. v. Briner, Mo.App., 229 S.W.2d 259.
There were several meetings and telephone conversations between plaintiff's general manager, Schlensky, its secretary, Blond, and one or more of the defendants. The first was in Kansas City on December 7, 1950, the day before the picket lines were established. The others were in St. Louis on December 8 (after the lines had been set up) and December 9 and in Kansas City on December 12, the day before the hearing. A suggested form of contract between plaintiff and the union was exhibited and referred to. Plaintiff's evidence was that defendants demanded that plaintiff execute the contract as a condition to withdrawal of the picket lines. Defendants' evidence was that the form was one which they had planned to show plaintiff's St. Louis area employees as containing the terms of a contract to be offered to plaintiff if and when the union represented a majority of those employees.
Plaintiff's theory and evidence was that defendants set up the picket lines with intent and purpose to unlawfully compel plaintiff to recognize the union as the exclusive representative of such employees for the purposes of collective bargaining, and to unlawfully compel plaintiff to sign a collective bargaining contract with the union. Defendants' theory and evidence was that the picketing was part of an "organizational campaign"; that their purpose was to inform the public that the St. Louis area employees were nonunion, and that plaintiff was a nonunion employer in that area and, by advertising, to persuade the public to patronize union drug stores; and that any refusals to cross the picket lines were voluntary and uncoerced. (It was undisputed that the refusals were voluntary and uncoerced.)
Defendants recognize the "sharp conflict in the testimony" as to the purpose of the picketing, and concede that "whenever there is conflicting evidence of that kind it becomes the task of the [trial] court to pass upon the credibility of witnesses, their demeanor on the stand and all of the other things which are necessary before the [trial] court can decide which contention to accept * * * and we do not overlook the fact that the trial court's findings in this regard should not be lightly overruled." However, they say that the evidence as to their illegal purposes was not positive and uncontradicted and that, therefore, plaintiff failed to sustain its burden of proof; "the worst that can be said of defendants' position is that there is a conflict in the testimony and the evidence."
Plaintiff sustained its burden of proof. According to Schlensky and Blond, in Kansas City on the afternoon before the picket lines were set up, and in the very first conference, defendant Kavner (who testified he was the union's "director of organization and strikes") twice told plaintiff's *169 officials: "Either you sign this contract today or there will be pickets on your stores tomorrow and on your warehouse in [North] Kansas City." On the afternoon of the next day (the picketing began that morning), Schlensky, then in St. Louis, telephoned the union's office and, in Kavner's absence, talked to Saffo, who said, "Why don't you and I get together, get the contract signed and I will pull the pickets off." The following morning, in a conference in the union's office, Kavner told Schlensky that what he (Kavner) "really wanted" was recognition of the union as bargaining agent for plaintiff's St. Louis area employees (and, asked what plaintiff should do "to get the pickets lifted from the St. Louis stores"), exhibited a contract form with a place for the signature of someone, "For the Katz Drug Co.," and said, "Sign the contract." On the day before the hearing, Kavner, who had come to Kansas City for the trial, telephoned Schlensky and "wanted to know whether the company had arrived at any decision regarding the contract."
This positive and cogent testimony sustains the trial court's finding that defendants' "design and intent" in establishing the picket lines was to compel plaintiff to recognize the union as the exclusive representative of the St. Louis area employees for collective bargaining purposes and to coerce plaintiff into signing a collective bargaining agreement. The decree restrained defendants, "so long as they do not represent the majority of plaintiff's St. Louis area employees," from demanding that plaintiff sign "a collective bargaining or other agreement."
The court further found that defendants had sought to compel plaintiff "to violate the laws, constitution and statutes of the United States of America and of the State of Missouri, said defendants then and there well knowing that the placing of a picket line about the premises of plaintiff as aforesaid would result in and have the inevitable effect of stopping deliveries of supplies, goods and materials to and from plaintiff's warehouses and stores and causing plaintiff's customers to cease doing business with plaintiff and also resulting in paralyzing and destroying plaintiff's business at the height of its Christmas season business; that said purposes were unlawful and said picketing tended to coerce plaintiff into influencing its employees to join said union, all in violation of the National Labor Relations Act of 1947 and the Constitution of Missouri." The decree restrained defendants (until they represented a majority of the employees): "from establishing any picket line or lines in and about plaintiff's stores or places of business which would affect, destroy or interfere with the receipt and delivery of merchandise to and from plaintiff's stores and places of business in the usual and ordinary course of business." We here note that this language is identical with that approved in Fred Wolferman, Inc., v. Root, 356 Mo. 976, 204 S.W.2d 733, 174 A.L.R. 585.
We need not rule defendants' contentions that: plaintiff failed to show the existence of a conspiracy to restrain trade; and that either the refusal of truck drivers to cross the picket lines, or that the voluntary withholding of patronage by the public does not establish such a conspiracy. Defendants' return and answer denied having conspired to restrain trade. (Apparently, defendants were referring to Section 416.010 RSMo 1949, V.A.M.S. See Gruet Motor Car Co. v. Briner, supra; Empire Storage & Ice Co. v. Giboney, 357 Mo. 671, 210 S.W.2d 55; Rogers v. Poteet, 355 Mo. 986, 199 S.W.2d 378.) But such a conspiracy was not an issue. Plaintiff did not plead, there was no evidence of, the trial court made no findings as to, and the decree does not mention such a conspiracy. And there was no suggestion that the public's withholding of patronage was not voluntary.
Both Sec. 157 of the Labor-Management Relations Act of 1947, § 141 et seq. 29 U.S.C.A., and Sec. 29, Art. I, Mo.Const.V.A.M.S. guarantee to employees the right of collective bargaining through representatives of their own choosing. Sec. 157 also guarantees that employees may refrain from exercising that right. It is an unfair labor practice for an employer *170 either to interfere with, restrain or coerce employees in the exercise of that right, or to refuse to bargain collectively with the representative of a majority of the employees. Sec. 158(a)(1) and (5). Under Sec. 159, a representative of a majority of the employees is the exclusive representative of all the employees for collective bargaining purposes.
Defendants do not complain of the restraint, so long as they do not represent a majority of the St. Louis area employees, from demanding that plaintiff recognize the union or enter into a collective bargaining agreement or any other kind of an agreement. At the hearing, they conceded that plaintiff could not lawfully recognize them as bargaining agent or enter into an agreement. They asserted, but failed to establish, that the picketing was part of a legitimate and proper "organizational campaign." They now contend that, as the picketing was peaceful, the injunction violated their constitutional right of peaceful picketing for a lawful purpose. They invoke the First and Fourteenth Amendments to the Constitution of the United States, and Sec. 8, Art. I, Mo.Const. Yet in their brief, they concede that they "do not mean to imply that a state is without power to restrain even peaceful picketing if its purpose is unlawful, or that picketing for a lawful purpose may not be restrained by injunction if its manner is not peaceful." (Defendants' italics.)
This court has "long recognized the connection between peaceful picketing and the constitutional guaranty of free speech." Fred Wolferman, Inc., v. Root, 356 Mo. 976, 204 S.W.2d 733, 735. "It has been held by this and other State courts and the United States Supreme Court that while peaceful picketing is generally permissible under the Fourteenth Amendment, Const. U. S. for a lawful and proper purpose, yet such picketing may be enjoined when the purpose is unlawful; * * *." State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S.W.2d 1, 9. See cases therein cited; Kincaid-Webber Motor Co. v. Quinn, 362 Mo. 375, 241 S.W.2d 886; Adams Dairy Co. v. Dairy Employees Union, Mo.Sup., 250 S.W.2d 481. In Fred Wolferman, Inc. v. Root, supra [356 Mo. 976, 204 S.W.2d 736], one of the purposes was "giving information to the public." We said: "While we assume that purpose is lawful still when it is coupled, as it is here, with unlawful purposes, the fact that one of several purposes is lawful does not make the picketing lawful." We reaffirm these rulings and hold that the instant decree restraining peaceful picketing was proper and does not deprive defendants of their constitutional or statutory rights.
Defendants next assert that the restraint from peaceful picketing was improper because: They, "for themselves, their union and its officers, made a full and unequivocal renunciation of [certain hereinafter enumerated] activities, in their pleadings, and again through witnesses, and by their attorney at the close of the case." At the close of plaintiff's case, defendants amended their return and answer. The amendment was: defendants "now specifically renounce any intention, present or future, to do any [certain thereinafter] enumerated acts or things and hereby offer to this honorable court their profound assurances of sincerity in so renouncing said intentions." The enumerated items were: (a) Coercion of plaintiff to interfere with the employees' collective bargaining rights; (b) mass picketing; (c) violence, coercion, threats, intimidation or injury to plaintiff's employees, suppliers, customers or transportation agencies; (d) coercion or intimidation of or injury to anyone then or thereafter doing business with, selling, delivering or transporting goods, materials or merchandise to plaintiff's places of business; and, "other than by the maintenance of the peaceful picket lines and advertising heretofore pleaded, to engage in acts or conduct hindering, interfering with or preventing or endeavoring to hinder, interfere with or prevent, by any means whatsoever the transportation of materials, products or merchandise purchased from any suppliers or sold by plaintiff to any customer"; (e) requiring plaintiff to recognize "the union as bargaining representative of any of plaintiff's employees until such time, if ever, defendants or the union have been *171 authorized to represent a majority of plaintiff's employees by the voluntary decision of the employees themselves"; and (f) engaging in unlawful acts or conduct "in connection with said picketing and advertising program." (Our italics.) Kavner informed the court that he had complete authority to make the renunciation and to assure the court that "all things renounced will be avoided."
Thus, while defendants renounced their unlawful purposes, they did not renounce peaceful picketing. They affirmatively stated their intention, unless enjoined, to resume picketing in a lawful manner for a lawful purpose. Defendants say: "It is elementary that injunction does not lie to restrain acts already committed, nor threats which have been abandoned by defendants in a particular case unless there is reason to anticipate their continuation or recurrence." The issue here is the sufficiency of the evidence to sustain this finding of the trial court: defendants' renunciation "was not convincing to the court of an intent to abandon the original unlawful purposes and was therefore insufficient as a matter of fact and law to purge them of their wrongful acts and interests"; that, unless enjoined, "defendants will in all probability continue their unlawful acts and continue unlawfully to attempt to coerce plaintiff by picketing and other acts into the commission of the unlawful" acts; that "defendants' purposes in picketing were unlawful * * * and even though some of defendants' purposes in the future picketing might be lawful, the other purposes and intents of defendants in establishing and maintaining a picket line around plaintiff's stores and warehouses would be in furtherance of their original unlawful purposes; they are wrapped in the same bundle, and it is impossible for the court to separate the said picketing into legal and illegal parts."
Defendants say that the basis of injunctive relief is "the present reasonability of injury to a plaintiff," citing Donnelly Garment Co. v. Dubinsky, D.C., 55 F.Supp. 587, 603. The instant pleaded renunciation, in and of itself, was not conclusive upon the trial court. See Gruet Motor Car Co. v. Briner, supra. The renunciation is supported only by Kavner's testimony and the statement of his attorney. We agree with defendants that "there is nothing in the record disparaging the attorney's sincerity." But we do not agree that "there is nothing in the record disparaging defendants' sincerity, but, on the contrary, there is every reason to believe that the defendants are honest and sincere in making the renunciatory statement." The evidence we have summarized is most persuasive why the trial court was convinced that defendants had not abandoned their original unlawful purposes and that defendants' intent was to accomplish those purposes by resumption of peaceful picketing.
Defendants cite Gruet Motor Car Co. v. Briner, Mo.App., 229 S.W.2d 259, wherein the defendants renounced picketing for unlawful purposes. However, in that case, the plaintiff failed to sustain its burden of proof as to the defendants' initial unlawful purposes. And see Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549. In the Minnesota District Court case of Armour and Company v. United Packinghouse Workers, 15 CCH Labor Case No. 64566, cited by defendants, the purposes of the picketing were lawful but the manner was unlawful. The renunciation was of the unlawful mannernot, as here, of unlawful purposes. Defendants also cite Fred Wolferman, Inc., v. Root, supra, wherein we noted that the record did not contain a renunciation of picketing for unlawful purposes. We did not there hold that such a renunciation, in and of itself, would have been conclusive on the trial court.
Defendants contend that the decree's language is too general and "is capable of being so construed as to restrain lawful as well as alleged unlawful acts." All restraints were to continue so long as defendants and the union did not represent a majority of the St. Louis area employees. The first restraint was from any picketing "in or about plaintiff's stores, warehouses or places of business which would affect, destroy or interfere with the receipt *172 and delivery of merchandise to and from plaintiff's stores, warehouses and places of business in the ordinary and usual course of business." Our ruling above (that peaceful picketing for unlawful purposes is unlawful) disposes of defendants' contention that the decree erroneously enjoined peaceful picketing. This restraint, prohibiting the picketing of plaintiff's premises for unlawful purposes, does not infringe upon defendants' right to inform the public that plaintiff's St. Louis area employees were nonunion. Fred Wolferman, Inc., v. Root, supra; Empire Storage & Ice Co. v. Giboney, supra.
Defendants do not challenge the restraint from interference with the delivery and receipt of merchandise by "blacklisting." For instant purposes, we shall construe "blacklisting" as the equivalent of "secondary boycott," generally prohibited by Sec. 158(b)(4), 29 U.S.C.A. They suggest, but do not `brief or argue, the impropriety of the restraint from "any and all interference with plaintiff's property rights or business by intimidation, threats, menace or force." While both of these restraints were beyond the scope of the pleadings and the evidence, the methods thus enjoined are unlawful, irrespective of purposes. We do not view these restraints as violative of defendants' constitutional or statutory rights.
However, the language of paragraph "C" of the decree is too broad. It restrains defendants from distributing literature in and about plaintiff's premises, "or from using other means which would affect, destroy or interfere with the receipt and delivery of merchandise to and from plaintiff's stores, warehouses and places of business in the usual and ordinary course of business." As there had been neither distribution of literature nor interference with the receipt and delivery of merchandise by any means other than picketing, these restraints were beyond the pleadings and the evidence. These particular restraints should have been limited to the use of any other means for the purposes of coercing plaintiff into recognizing the union as a collective bargaining agent or into signing an unlawful contract. Commission Row Club v. Lambert, Mo.App., 161 S.W.2d 732; Rogers v. Poteet, supra.
The cause is affirmed and remanded with directions that the decree be modified in accordance herewith.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.
All concur.