FLORA B. McCLAREN, Administratrix of the Estate of JAMES A. Mc-CLAREN, Appellant, v. G. S. ROBINS & COMPANY, a Corporation. —162 S. W. (2d) 856.

Division Two, June 17, 1942.

*Jones, Hocker, Gladney & Grand, Lon Hocker, Jr.,* and *William G. O'Donnell* for appellant.

654

*Moser, Marsalek & Dearing, Alva C. Trueblood* and *Wm. H. Allen* for respondent.

TIPTON, P. J.—This is an action brought in the circuit court of the City of St. Louis for the wrongful death of James A. McClaren by the administratrix of his estate against the respondent for having sold to the deceased's employer, Combustion Engineering Company, carbon tetrachloride in containers that did not have proper labels showing that the contents were poisonous. The deceased, using the carbon tetrachloride to clean a boiler that was being installed by his employer, became poisoned and died. The jury returned a verdict for the respondent, and the appellant has duly appealed.

Several rulings of the trial court are assigned as errors by the appellant, but since the respondent so earnestly insists that its demurrer

to the evidence should have been sustained, we will examine that question.

The evidence showed that during the time from March 4, 1938, until May 4, 1938, the deceased was in the employ of the Combustion Engineering Company, which was installing a large, new boiler at the plant of Armour & Company in Illinois. The pipes, tubes, and other parts of the new boiler, and the pre-heater connected therewith, had been covered with grease to prevent rusting, and this grease had to be removed. On March 19, 1938, the Combustion Engineering Company obtained from respondent, located in St. Louis, Missouri, four five-gallon cans of carbon tetrachloride to be used as a solvent for removing this grease. The labels on these four cans each contained the words, "Five Gallons Carbon Tetrachloride," but contained no warning or direction for using the liquid.

On April 19, 1938, respondent delivered to the Combustion Engineering Company two more five-gallon cans of carbon tetrachloride for the same purpose. Upon each of these two cans appeared the words, "G. S. Robins & Co., Carbon Tetrachloride," and upon each was a label which read as follows: "Volatile Solvent, Use With Adequate Ventilation. Avoid Prolonged Breathing." This was a hurry-up order which was wanted that very day. On May 4, 1938, the deceased was working in the pre-heater of the boiler, having carbon tetrachloride in an open pail. A rag was saturated in carbon tetrachloride and "sloshed" around the part from which the grease was to be cleaned. The pre-heater was a cased-in box about fourteen feet long, eight feet high and about forty inches wide, and it was uncomfortably hot in the pre-heater. The deceased worked inside of this pre-heater from three to six hours that day. There was considerable heat in the building, especially near the new boiler; in fact, there were places where the temperature would be as high as 110 degrees. On that day the deceased became ill, and died about midnight of May 7, 1938. The evidence tended to show that his illness and death were caused by breathing the fumes of carbon tetrachloride, and there was evidence this liquid was commonly known as poisonous.

The appellant contends that it was negligence for the respondent to have sold carbon tetrachloride to the Combustion Engineering Company without the word "poison" thereon, because respondent violated "section 184, chapter 38, Illinois Revised Statutes 1937" which reads as follows:

"Every druggist or other person who shall sell and deliver any arsenic, strychnine, corrosive sublimate, prussic acid, or other substance . . . usually denominated as poisonous without having the word 'poison' . . . thereon, shall be fined not exceeding $25.00."

Carbon tetrachloride is not found in the above section, but appellant contends that it comes within the phrase "other substance usu-

ally denominated as poisonous.'' The ejusdem generis rule is that where a statute contains general words only, such general words are to receive a general construction, but, where it enumerates particular classes or things, followed by general words, the general words so used will be applicable only to things of the same general character as those which are specified. [Keane v. Strodtman, 323 Mo. 161, 18 S. W. (2d) 896; Mangelsdorf v. Pennsylvania Fire Insurance Company, 224 Mo. App. 265, 26 S. W. (2d) 818; Puritan Pharmaceutical Company v. Pennsylvania Railroad Company, 230 Mo. App. 848, 77 S. W. (2d) 508.]

A case similar to the case at bar is the case of the Pure Oil Company v. Gear, 83 Pac. (2d) 389, 1. c. 395. That case was an action for damages on account of cattle being poisoned by drinking salt water from an oil well. The Oklahoma Supreme Court, in ruling the case, said:

''Also, under the rule ejusdem generis, salt water and other deleterious substances coming from the production of oil and gas wells cannot be considered as 'other poison' similar to strychnine, and, by reason of this canon of construction, Sec. 2440, 21 Okla. St. Ann., sec. 1197, supra, cannot be made applicable here.'' Before the phrase ''or other substance usually denominated as poisonous'' can be construed to include carbon tetrachloride, we must be able to say that it is like some one of the species and kinds of poisons expressly mentioned in the statute. This we cannot do, for we think carbon tetrachloride contains no single element of the various poisons enumerated by the statute. Obviously, carbon tetrachloride is not a drug, but a grease solvent, sold commercially as a cleaning fluid, and is not the same kind or class as the substances mentioned in the Illinois statute. The poisons mentioned in that statute are of such character and universally so dispensed as to require a warning of their poisonous nature if taken internally, in order to prevent a purchaser, or other person into whose hands the drug may come, from taking the same internally by mistake and to guard against overdoses of such thereof as may be prescribed for medicinal purposes, either alone in minute quantities or an ingredient of a medicinal preparation.

It follows, therefore, that in the light of the penal nature of this statute which requires that it be strictly construed that carbon tetrachloride is not plainly or necessarily included among its provisions, it was not negligence for the respondent to have sold carbon tetrachloride without having the word ''poison'' thereon.

Nor do we think appellant has adduced any substantial evidence that respondent negligently sold and delivered carbon tetrachloride in containers bearing no warning that its use might cause sickness or death. There was no evidence that the carbon tetrachloride the deceased was using on May 4, 1938, came from the cans that respondent delivered in March. The only reasonable inference is that

it came from the cans delivered in April. This was a hurry-up order, and on that date the deceased's employer had on hand less than a full can. Appellant does not contend that deceased used the liquid from the can delivered on March 19, 1938. Deceased had been using the carbon tetrachloride from March 4, 1938, until he got sick on May 4, 1938, and we conclude the cans delivered on April 4, 1938, were sufficiently labeled. On the label was printed these words, "Volatile Solvent, use with adequate ventilation. Avoid prolonged breathing of vapor." The evidence shows that there is no danger in using this product unless it is used in a confined, unventilated place. An agreed statement of facts shows that other manufacturers of carbon tetrachloride use a similar label; in fact, this label was adopted by manufacturers of this product, by agreement, in May or June of 1934, and the same was approved by the Surgeon General of the United States and made effective by him on July 16, 1934.

"No one is held by the law to a higher degree of care than the average in the trade or business in which he is engaged." [Ketterer v. Armour & Company, 247 Fed. 921, l. c. 931; L. R. A. 1918D, 798.] A man, in conducting his business in the way that everybody else in a like business does, has measured up to the standard demanded by the law and has exercised the ordinary care of prudent men engaged in the business. [Schaum v. Southwestern Bell Telephone Company, 336 Mo. 228, 78 S. W. ▮ (2d) 439; Cheli v. Cudahy Brothers Company, 267 Mich. 690, 255 N. W. 414.]

From what we have said, it follows that the appellant did not make a submissible case and the judgment of the trial court was for the right party. The judgment of the trial court is affirmed. All concur.