STATE ex rel. MISSOURI POWER & LIGHT COMPANY, a corporation, Relator,

v.

The Honorable James T. RILEY, Judge of the Circuit Court of Cole County, Missouri, Nineteenth Judicial Circuit, Division No. 1, Respondent.

No. KCD 28848.

Missouri Court of Appeals, Kansas City District.

Jan. 31, 1977.

J. Steve Weber, Norman G. Curtwright, Jefferson City, for Missouri Power & Light Company, relator.

Dale E. Sporleder, Jefferson City, Howard F. Sachs, Kansas City (Spencer, Fane, Britt & Browne, Kansas City, of counsel), for relator.

Stanley P. Christopher, Deputy Counselor, Russell D. Jacobson, Associate Counselor, Kansas City, Jackson County, for amicus curiae, Jackson County.

William M. Barvick, Jefferson City, for respondent.

Paul W. Phillips, Asst. Gen. Counsel, for amicus curiae, Missouri Public Service Commission.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

SWOFFORD, Judge.

In January of 1975, the relator, Missouri Power and Light Company (MPL) filed with the Missouri Public Service Commission (Commission) two revised tariffs for the purpose of increasing rates for gas and electric service supplied to its customers. Various hearings and proceedings ensued before the Commission which resulted in orders on December 5, 1975 (to be effective December 17, 1975) disapproving the tariffs, as filed, but permitting MPL an increase in both its electric and gas rates.

Throughout the course of these proceedings, William M. Barvick actively participated as Public Counsel, and duly filed Motions for Rehearing before the Commission on December 16, 1975, which were denied on December 23, 1975. Thereafter and on January 21, 1976, the Public Counsel filed a Petition for Review in the Circuit Court of

Cole County, Missouri, and that court's Writ of Review issued. In February, 1976, MPL, upon motion, was permitted to intervene in the review proceedings and filed a Motion to Dismiss Appeal upon the sole ground that Public Counsel of the State of Missouri "lacks authority to appeal an order or decision of the Public Service Commission." This motion to dismiss was overruled and this proceeding followed and a preliminary rule in prohibition issued.

In this court, Jackson County, Missouri and the Commission were permitted to file briefs *amicus curiae* in which both supported the standing of Public Counsel to appeal the Commission's decisions and urged that the preliminary rule in prohibition be discharged.

It is thus apparent that this proceeding does not involve the propriety of the Commission's approval of rate increase for MPL, but rather, the sole and only issue here is whether or not the Public Counsel of Missouri had authority, under the law, to process an appeal or initiate a review proceeding in the circuit court of Cole County to test the validity and propriety of those orders.

Any resolution of this issue requires a recall of the basic and underlying principles of the need for governmental regulation of public service utilities. Historically, such controls were initially imposed by the legislatures as a result of an inevitable recognition that the operation of public utilities necessarily affected the public's interest and welfare. Some form of governmental control was required—control that on the one hand, would not stifle free enterprise or force such utilities out of profitable operations or suppress capital investment, and on the other hand, would protect the consumer-public. In short, the legislation was intended to create a quasi-judicial administrative forum to weigh the legitimate interest of the utilities with that of the consumer-public so as to maintain the essential services and operations at fair and reasonable levels and rates.

When the Missouri Public Service Commission was created by the Legislature in 1913, the office of General Counsel was established (Laws 1913, p. 562), and his duties were initially confined to represent and appear for it in all actions and proceedings in support of its orders and decisions. Ten years later, Laws 1923, p. 330, the duties of the General Counsel were expanded by the following:

"In addition to the foregoing duties, it is hereby expressly made the duty of the general counsel to represent the public in all rate hearings before the Commission at its office, and he shall, upon request, give to the public and any municipality advice and opinions as to their rights under the public service commission law and the legal methods and procedure for obtaining same."

This statute has remained unchanged since its enactment in 1913 and the 1923 amendment. Section 386.080, RSMo 1969.

The General Counsel thus was given two areas of responsibility: *First,* a duty to act as attorney for the Commission, including the defense of the Commission's rulings and decisions; and *second,* the duty to represent the public in proceedings before the Commission. While these duties were not always inconsistent, it is readily apparent that occasions were likely to arise where the inconsistency would be violent and insuperable. For example, the General Counsel could not consistently appeal from a Commission decision which he was duty bound to defend.

This conflict was made pointedly apparent in the case of *State ex rel. McKittrick v. Missouri Public Service Commission,* 352 Mo. 29, 175 S.W.2d 857 (banc 1943). In that case, the court held that the Attorney General did not have the right to appeal from a Commission decision since he did not have the right to intervene in the proceeding before the Commission on behalf of the general public whose interests were there exclusively represented, under authority of the statute, by the General Counsel. The dilemma thus presented was that, although the General Counsel was possessed by statutory mandate with the duty to represent the public, he was shackled, in many in-

stances, from offering effective representation by reason of his first priority to support the Commission's decision. And, under *McKittrick,* the Attorney General was precluded from assuming the role of public representative because that duty was imposed by statute upon the General Counsel.

During the years when utility rates were low and sources of energy were thought to be plentiful there was generally little public or legislative concern regarding the interests of the broad class of public consumers with reference to utility regulation or the adequacy of their representation in proceedings before the Commission or the courts which affected the rates charged and the services afforded them.

With the combination of energy shortages, inflation and soaring utility rates, public interest and concern became increasingly apparent. It was obvious that some form of active and effective consumer participation in the regulation of public utilities was essential.

" * * * [T]o provide for improved accountability in performance of service to the citizens of the state", the General Assembly passed the Omnibus State Reorganization Act in 1974. Senate Bill No. 1 of the 1st Extraordinary Session of the 77th General Assembly, Appendix B, Vol. 3A, 1976 Pocket Parts, VAMS (hereinafter referred to as OSRA).

Section 4(5) of OSRA provides:

"(5). The powers, duties and functions vested in the general counsel to the public service commission, chapter 386 RSMo and others, are transferred by type II transfer [1] to the department of consumer affairs regulation and licensing. The general counsel [2] shall be appointed by the director of the department and all other employees of the office, except the general counsel and his secretary, shall be selected by the counsel in accord with chapter 36 RSMo. Funding for the gen-

eral counsel's office shall be by general revenue."

and Section 4(6) of OSRA provides:

"(6). The public service commission is authorized to employ such staff as they deem necessary for the functions heretofore performed by the general counsel *other than those powers, duties and functions relating to representation of the public before the public service commission."* (Emphasis supplied)

■ There is no real dispute between the parties here that these sections of the OSRA effectively transferred from the General Counsel to the Public Counsel the obligation and responsibility of the former to the latter to represent the public before the Commission. However, the relator strongly urges that those "powers, duties and functions" do not include the right of Public Counsel to appeal or seek review from the Commission's orders allowing the MPL rate increases.

Section 386.500(1), RSMo 1969, provides that,

"After an order or decision has been made by the Commission *any* corporation or *person* or public utility *interested* therein shall have the right to apply for a rehearing in respect to any matter determined therein, * * *." (Emphasis supplied)

and that such application for a rehearing (and its denial) are conditions precedent to the right of judicial review.

Section 386.510, RSMo 1969, provides the procedural methods for filing of a petition for review in the circuit court, after the Commission acts upon a motion for rehearing.

In reviewing the effect of these statutes the court in *State ex rel. McKittrick v. Missouri Public Service Commission,* supra, stated at l. c. 860:

" * * * It is evident that the foregoing provisions contemplate the party ap-

---

1. For a definition of "type II transfer" see OSRA 7(1)(b).

2. This officer is denominated herein by all of the parties on the briefs as "Public Counsel"

and, in fact, is the Public Counsel, Department of Consumer Affairs Regulation and Licensing, in this matter, Mr. William M. Barvick.

plying for a rehearing, writ of review or an appeal shall be a *party to the record, interested* and *aggrieved* \* \* \*." (Emphasis supplied)

The right and duty of the Public Counsel to appear in behalf of the public (here the consumers of the gas and electric services afforded by MPL) at the proceedings before the Commission as a party of record is not questioned. Neither is any claim made that he failed to properly follow the statutory procedures to obtain judicial review of the Commission's orders permitting rate increases. As previously noted, the sole claim of MPL is that he lacked statutory authority to process the review and that his duty to represent the public-consumer's interests, as a class, before the Commission did not include any duty to protect those same interests by review proceedings. This position if adopted would leave the public without recourse, protection, remedy or representation beyond the proceedings before the Commission and would effectively withdraw from them the benefits of statutory judicial review of the Commission's rulings and decisions in all cases where their interests were initially represented at the Commission level by the Public Counsel. Such a result would do violence to the clear historical purpose and intent of applicable law with reference to regulation of public utilities and the protection of public interest. Did the legislature intend such a result when it created the office of Public Counsel, Department of Consumer Affairs, Regulation and Licensing under OSRA?

■ This court in searching for the answer to that question is guided by certain well established rules and recognized principles. Paramount among these is that the statute must be viewed in the light of the circumstances of the time when the statute was passed and the goal or purpose it sought to achieve and the conditions it sought to remedy. *Central Bank of Clayton v. State Banking Board,* 509 S.W.2d 175, 182[2] (Mo.App.1974).

■ Other rules to be employed in the search for legislative intent have been expressed in many cases and include (a) the

legislative purpose should be assumed to be a reasonable one; (b) laws are presumed to have been passed with a view to the welfare of the community; (c) it was intended to pass an effective law, not an ineffective or insufficient one; and (d) it was intended to make some change in the existing law. *In re Estate of Tompkins (Hall v. Carpenter),* 341 S.W.2d 866, 872[8] (Mo. banc 1961); *Cohen v. Poelker,* 520 S.W.2d 50, 52 (Mo. banc 1975), and cases cited therein.

■ Under the searchlight of any of these rules, it was clearly the intent of the legislature in the creation of the office of Public Counsel to divorce his functions from those of the General Counsel for the Commission; to place them in adversary positions where the facts of a situation warranted; to impose upon the Public Counsel the duty to represent the interests of the public and as a concomitant thereof clothe him with the power to adequately represent them; and, thus to achieve a fair balance of rights as between the public interest on the one hand and private interests on the other.

To ascribe any other intent, as here urged by MPL, and to hold that the Public Counsel's duties and powers did not include the right to seek judicial review would be to charge the legislature with the enactment of an unreasonable, ineffective and insufficient law, destructive of its underlying purpose and "the spirit of the act", *State ex rel. Jackson County v. Public Service Commission,* 532 S.W.2d 20, 29[3] (Mo. banc 1975); *State ex rel. Dravo Corporation v. Spradling,* 515 S.W.2d 512, 517[5] (Mo.1974); *Laclede Gas Co. v. City of St. Louis,* 363 Mo. 842, 253 S.W.2d 832, 835[3] (banc 1953); *St. Louis Southwestern Railway Co. v. Loeb,* 318 S.W.2d 246, 252[1] (Mo. banc 1958).

■ Further support for the position here taken is found in the rule that the construction placed upon the statutes by those charged with their administration be accorded strong consideration. *State ex rel. Jackson County v. Public Service Commission,* supra, at l. c. 28[1]; *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197[3] (Mo. banc 1972). In the case at bar,

both the Public Counsel and the Commission, through its General Counsel, forcefully argue that under the present state of the law the Public Counsel has the right and duty to seek judicial review of the Commission's decisions.

In an attempt to support its contention MPL relies heavily upon the fact that the original proposed OSRA Act contained a provision which specifically stated:

"The public counsel shall, where the public interest will be served, represent the public in all utility and motor carrier matters before regulatory agencies and on appeal."

(Senate Bill No. 1, 77th General Assembly, First Extraordinary Session, December 3, 1973 at pp. 16–17)

OSRA when finally written into the law did not contain this provision but simply transferred the authority and duties theretofore lodged in the General Counsel with reference to the public interest to the newly created office of Public Counsel by Section 4(5), supra. MPL argues that since this proposed provision was not enacted the legislature clearly intended that the Public Counsel be denied the right of appeal or review. Such reasoning cannot be accepted for several reasons.

It can be argued with equal logic that the legislature failed to enact this provision because it felt that it was unnecessary and that a simple transfer of the General Counsel's duties, pertaining to public interest, to the Public Counsel accomplished the same objective. Further, in the following legislative session, 1976, among other amendments proposed to OSRA was included the following:

"Nothing in this act shall be construed or interpreted to mean that the public counsel shall not have the right to appeal any and all orders of the public service commission which right of appeal exists *and has existed since the time of transfer.*" (Emphasis supplied)

(Journal of the House, Second Regular Session of the 78th General Assembly, Id. at 1322)

The bill containing this (and other amendments to OSRA) passed the House and found its way to the Senate calendar but was not voted upon in the final week of April, 1976, because it could not be reached before adjournment. It does, however, express a clear legislative purpose that the *original* OSRA was intended to permit the Public Counsel the right of review just as any other *interested* party to Commission proceedings is permitted to do by following procedural methods.

■ One of the accepted canons to be applied when a court is called upon to construe a statute "permits and often requires an examination of the historical development of the legislation including changes therein and related statutes", *State ex rel. Klein v. Hughes,* 351 Mo. 651, 173 S.W.2d 877, 879[3] (1943); *State ex rel. Smith v. Atterbury,* 364 Mo. 963, 270 S.W.2d 399, 405[7] (banc 1954), and in so doing resort may be had to the Journals of the legislature and the original bill and amendments, *Bullington v. State,* 459 S.W.2d 334, 338[1] (Mo.1970), all as bearing upon legislature.

It is provided by Article V, Section 22, of the Constitution of Missouri:

"All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; * * * "

■ This provision has been held to guarantee the right of judicial review as a *constitutional guarantee* as opposed to a statutory right subject only to the conditions precedent that the party is properly before the administrative body and complies with the statutory methods to secure judicial review. *State ex rel. Summers v. Public Service Commission,* 366 S.W.2d 738, 742[5] (Mo.App.1963); *Warnecke v. State Tax Commission,* 340 S.W.2d 615, 618[3] (Mo. 1960); *State ex rel. Burns v. Stanton,* 311 S.W.2d 137, 140[2] (Mo.App.1958).

■ Such party seeking review need not have a direct pecuniary or property right involved but only such interest as would

require that he be heard before the administrative body (here the Commission). *State ex rel. Consumers Public Service Co. v. Public Service Commission,* 352 Mo. 905, 180 S.W.2d 40, 45[4] (banc 1944); *State ex rel. Crown Coach Company v. Public Service Commission,* 239 Mo.App. 198, 185 S.W.2d 347, 356[1, 2] (1944).

MPL relies heavily upon the case of *Bosley v. Dorsey,* 191 Md. 229, 60 A.2d 691 (Court of Appeals 1948), wherein the Maryland court held that a Public Counsel had no right to appeal, under facts similar to the case at bar. This court is urged to adopt the principles of *Bosley* as the law in Missouri and, while that decision is not, of course, binding here, it has been carefully analyzed and found to be inapposite and not persuasive. It will not be followed.

In summary, the conclusion is reached that the Public Counsel had the obligation and duty imposed by statute to appear as a party of record in the proceedings before the Commission and he did so; he was and is an "interested" party within the meaning of Section 386.500(1); as such he fully complied with all of the procedural requirements to perfect a review of the Commission's decisions allowing MPL gas and electric rate increases; that in so doing, he performed the duties of his office as intended by the legislature and guaranteed by the Missouri constitution; and, that the respondent had and has full and complete jurisdiction over the review proceedings and properly overruled MPL's motion to dismiss such proceedings.

Accordingly, the preliminary rule in prohibition is discharged.

All concur.