STATE of Missouri, ex rel. John C. DANFORTH, Attorney General, Plaintiff-Appellant,

v.

EUROPEAN HEALTH SPA, INC., and K. C. Fitness Centers, Inc., Defendants-Respondents.

No. WD 30874.

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

John Ashcroft, Atty. Gen., William L. Newcomb, Jr., Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Richard M. Webster and William L. Webster, Elliston & Webster, Webb City, for defendants-respondents.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

1. All statutory references are to RSMo 1978, unless otherwise specified.

TURNAGE, Presiding Judge.

In 1968 the Attorney General filed an action seeking to enjoin Plaza Club, Inc. from engaging in certain merchandising and advertising practices prohibited by §§ 407.010 to 407.130, RSMo 1978.[1] After a temporary restraining order was issued, the Attorney General and Plaza entered into an assurance of voluntary compliance pursuant to § 407.030. The court approved the agreement of voluntary compliance and dissolved the temporary restraining order. European Health Spa purchased Plaza Club, Inc. and another agreement of voluntary compliance was entered into between the Attorney General and the Health Spa in 1969. That agreement, also approved by the court, provided that the Health Spa would comply with the law and that the Attorney General could institute proceedings under Chapter 407 or any applicable law including a petition for civil penalty under § 407.110. (The agreement did not state whether or not such further proceedings were for violations of the agreement.)

In March, 1978, the Attorney General filed a petition for civil penalties alleging that the Health Spa[2] had committed certain acts in violation of the assurance of voluntary compliance and sought civil penalties totalling $1,430,000, together with costs and a prayer for the appointment of a receiver pursuant to § 407.105. The trial court sustained a motion filed by the Health Spa and dismissed the Attorney General's petition for civil penalties, costs and the appointment of a receiver. The Attorney General has appealed and contends the petition stated a cause of action. Affirmed.

There is no dispute that an assurance of voluntary compliance was approved by the court and the petition of the Attorney General seeking civil penalties relies only on acts alleged to be in violation of that assurance. The State relies on the last sentence

2. Health Spa changed its name to K. C. Fitness Centers, Inc. after the petition was filed and that name was added to the petition for civil penalties.

of § 407.030 and § 407.110, referred to in such sentence, as its authority for seeking civil penalties for the alleged violation of the assurance of voluntary compliance.

The Sections which require examination are §§ 407.030, 407.100 and 407.110. Those Sections provide as follows:

*407.030*: In the administration of sections 407.010 to 407.130, the attorney general may accept an assurance of voluntary compliance with respect to any method, act or practice deemed to be violative of sections 407.010 to 407.130 from any person who is or has engaged in such a method, act or practice. The assurance shall be in writing and be filed with and subject to the approval of the circuit court of the county in which the alleged violator resides or has his principal place of business, or the circuit court of Cole county. Such assurance of voluntary compliance shall not be considered an admission of violation for any purpose. Matters thus closed may at any time be reopened by the attorney general for further proceedings in the public interest, pursuant to section 407.110.

*407.100*: Whenever it appears to the attorney general that a person has engaged in or is engaging in any method, act, or practice declared to be unlawful by sections 407.010 to 407.130, he may, after notice to such person, if such notice can be given in the manner provided in section 407.040, seek and obtain in an action in a circuit court an injunction prohibiting such person from continuing such methods, acts or practices or engaging therein or doing anything in furtherance thereof. The notice shall state generally the relief sought and be served in accordance with section 407.050 at least three days prior to the institution of such action. If the court finds that the person has engaged in or is engaging in any method, act, or practice declared to be unlawful by sections 407.010 to 407.130, it may make such orders of judgments as may be necessary, including but not limited to the appointment of a receiver to prevent the use of employment by such person of any prohibited methods, acts or practices, or which may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use of employment of such prohibited methods, acts, or practices any moneys or property, real or personal, which may have been acquired by means of any method, act, or practice in sections 407.-010 to 407.130 declared to be unlawful.

*407.110*: Any person who violates the terms of an injunction issued under section 407.100 shall forfeit and pay to the state a civil penalty of not more than five thousand dollars per violation. For the purposes of this section, the circuit court of a county issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the attorney general acting in the name of the state may petition for recovery of civil penalties.

The Attorney General contends that under the last sentence of § 407.030 he is authorized to proceed directly to seek civil penalties for the violation of any assurance of voluntary compliance. This argument proceeds that the last sentence provides that matters closed by an assurance of voluntary compliance may be reopened for further proceedings pursuant to § 407.110. Section 407.110 provides for civil penalties for the violation of an injunction issued under § 407.100. The Attorney General would substitute in § 407.110 the words "assurance of voluntary compliance" for the word "injunction" and would add to either § 407.030 or § 407.110 that civil penalties could be obtained for a violation of the assurance. The Attorney General concedes there is no express provision in §§ 407.010 to 407.130 prohibiting the violation of the assurance of voluntary compliance or providing for the assessment of civil penalties for the violation of such assurances. The only authority relied upon is the proposed construction of §§ 407.030 and 407.110.

In *Rixke v. Western Union Tel. Co.*, 96 Mo.App. 406, 70 S.W. 265, 266 (1902) this court stated:

This is a penal statute, and as such it is not to be regarded as including anything which is not clearly and intelligently described in its very words, as well as manifestly intended by the legislature. And the rule is that, where there is a doubt, such a statute ought not to be construed to inflict a penalty which the legislature may not have intended.

The same rule was stated by the St. Louis District in *Nicholas' v. Kelley*, 159 Mo.App. 20, 139 S.W. 248, 251[4] (1911) when the court stated:

A uniform rule of decision prevails to the effect that a court may not create a penalty by construction, but, on the contrary, must avoid it unless it appears to be clearly intended by the Legislature.

In *City of Charleston v. McCutcheon*, 277 S.W.2d 736, 738[1, 2] (Mo. banc 1950) the court stated:

In an action brought to recover a statutory penalty the statute must be strictly and literally construed. *State ex rel. Ashby v. Cairo Bridge & Terminal Co.*, 340 Mo. 190, 100 S.W.2d 441. Penal provisions of a statute, or of a statute penal in nature are always strictly construed, and can be given no broader application than is warranted by its plain and unambiguous terms. *McClaren v. G. S. Robins & Co.*, 349 Mo. 653, 162 S.W.2d 856. Certainly an unambiguous statute, penal in nature, neither by implication nor otherwise, can be construed to be something other than it was written to be.

In *McCutcheon* the court stated that it did not have the power to delete and substitute words in a statute in order to construe the statute to impose a penalty.

From these rules applicable to penal statutes, there can be no doubt that a penal statute must be strictly construed and that a penalty may not be created by the construction of a statute but the penalty must clearly appear to have been intended to be created by the Legislature. Applying the applicable rules to the statutes in question, it is apparent that to sustain the argument of the Attorney General it is necessary to find authority for a penalty for violation of

an assurance by a construction of § 407.110 and to rewrite such Section. Under the applicable rules this court may not rewrite statutes passed by the Legislature and certainly may not impose a penalty when the Legislature has not in fact provided by a clear expression of intent for a penalty.

The best evidence of the Legislature's intent is the original roll of the enactment of §§ 407.010 to 407.130. *Protection Mutual Insurance Co. v. Kansas City*, 504 S.W.2d 127, 130[4] (Mo.1974). To do that this court obtained a copy of the original of H.B. 19, 74th General Assembly from the Secretary of State. *Brannock v. St. Louis M. & S. E. R. Co.*, 200 Mo. 561, 98 S.W. 604, 606 (1906). The original shows the Bill finally adopted was Senate Committee Substitute for House Committee Substitute for H.B. 19.

The original Bill was in typewritten form, with sections numbered 1 to 15. Section 407.030 first appeared in Senate Committee Substitute for House Committee Substitute for H.B. 19 as Section 3. The last sentence of Section 3 reads: "Matters thus closed may at any time be reopened by the Attorney General for further proceedings in the public interest, pursuant to Section 11." In the Bill, as originally typed, Section 11 is the same as § 407.100 which allows the Attorney General to seek an injunction to prohibit a person from continuing in practices prohibited by the Bill. Section 12, as originally typed, is the same as § 407.110 which provides civil penalties for violation of an injunction. Thus, it is apparent that in the Bill, as originally *typed*, "further proceedings" in Section 3, § 407.030, refers to an action to obtain an injunction and not an action to obtain civil penalties.

However, before the Bill was actually adopted, it apparently was discovered that the Bill contained only 14 sections, not 15 sections. There appears to have been a typographical error in the sequential numbering in that no Section 5 appeared. The sections were numbered sequentially from 1 to 4; the next section appears as Section 6, and the sections continue thereafter in consecutive number to Section 15.

To remedy this error, someone renumbered the sections after Section 4, by marking through the number with a pen and inserting the correct sequential numbering. Thus, the final version adopted by the Legislature contained 14 sequentially numbered sections.

When the sections were renumbered, however, the section originally typed as Section 11 was renumbered by pen to be Section 10. The section originally typed as Section 12 was renumbered by pen to be Section 11. The last sentence of Section 3, or 407.030, which refers to Section 11, remained unchanged, and, because of the new numbering, Section 3 now referred to the section on civil penalties, § 407.110, instead of the section pertaining to injunctions, § 407.100.

This Bill, as corrected by pen, was the version adopted by the Legislature with the result that Laws 1967, p. 607, ¶ 3, in the last sentence, refers to Section 11 as it read in the final renumbered version of the Bill.

In the original, typed, incorrectly numbered version of the Bill, it is clear that the Legislature intended that Section 3, or § 407.030, refer to the original Section 11, or § 407.100, with the result that the attorney general was given authority to seek an injunction under § 407.100 as to matters closed by the assurance of voluntary compliance rather than to immediately seek civil penalties for an alleged violation of an assurance. It is obvious the substantive law was changed by the renumbering, not on purpose, but simply to bring the section numbers into sequential unity.[3]

This court is, therefore, unable to find that the Legislature by merely renumbering the Bill sections to correct a typographical error, intended to change the substantive law of the Bill and to impose civil penalties for the violation of an assurance of voluntary compliance.

▮ Civil penalties can only be allowed in this case by ignoring the rules above stated

pertaining to penalties. It is apparent the Legislature did not clearly express an intent to impose penalties for a violation of an assurance of voluntary compliance. Authority to assess a penalty can only be found by resort to a construction of the statutes and by rewriting the law which courts may not do. When the legislative intent is clearly shown by the original roll not to impose civil penalties for violating the assurance, the conclusion necessarily follows that the trial court was correct in dismissing the petition.

The judgment is affirmed.

All concur.

## ON MOTION FOR REHEARING AND/OR TRANSFER TO THE SUPREME COURT

### PER CURIAM

The Attorney General has filed a motion for rehearing or to transfer this cause to the Supreme Court on the grounds that this court was not authorized to examine the original bill; that this court was rewriting § 407.030; and this court should follow the interpretation placed on § 407.030 by the Attorney General.

The motion first attacks the action of this court in examining the original bill by which §§ 407.010 to 407.130 were adopted. The opinion rests affirmance on the ground that to allow civil penalties for a violation of a voluntary assurance would require this court to rewrite the statutes involved and impose a penalty when the legislature has not in fact expressed a clear intent that such penalty be imposed. The original bill was examined to see if any further light could be shed on the intent of the legislature in passing this bill with the result that the original bill lent support for the conclusion that the legislature did not intend to impose a penalty for a violation of an assurance of voluntary compliance. This was

---

**3.** The assurance of voluntary compliance made no mention of § 407.110 or civil penalties for a violation of the assurance, but did provide the Attorney General could proceed under § 407.-

100. It appears the parties did not contemplate civil penalties when they entered into the agreement, but did agree further proceedings would be to obtain an injunction.

plain from the obvious renumbering of the sections in the original bill prior to passage. The Attorney General would deprive this court of any authority to examine the original bill to determine the intent of the legislature. In *Brannock v. St. Louis, M. & S. E. R. Co., supra*, the court at 98 S.W. 606 quoted from *Gardner v. Collector*, 73 U.S. 499, 6 Wall. (U.S.) 499, 18 L.Ed. 890 (1867):

"We are of opinion, therefore, on principle, as well as authority, that, whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges, who are called upon to decide it, have a right to resort to any source of information, which, in its nature, is capable of conveying to the judicial mind a clear and satisfactory answer to such question; . . . ."

In *Ex Parte Helton*, 117 Mo.App. 609, 93 S.W. 913, 915 (1906) the court stated it had examined the original bill of the law it was called upon to construe. The court quoted from 2 Sutherland on Construction of Statutes § 470: "The proceedings of the Legislature in reference to the passage of an act, may be taken into consideration in construing the act."

Consistent with *Brannock* and *Helton* this court in *State ex rel. Mo. Power & Light Co. v. Riley*, 546 S.W.2d 792, 797[6] (Mo. App.1977) held that when a court is called upon to construe a statute it could resort to the Journals of the Legislature and the original bill and amendments.

Because § 407.030 refers to § 407.110 which deals only with a violation of an injunction, with no mention of an assurance of voluntary compliance, this court was in doubt as to the precise terms of § 407.030. That led this court under the authority of *Brannock* to obtain the original roll[4] or bill to determine if the original bill did in fact refer to § 407.110. In examining the original bill the renumbering was discovered. The necessity for examining the original roll or bill is apparent because the renumbering can only be discovered by examining the original roll. This made it clear the legislature did not intend to impose civil penalties for a violation of an assurance of voluntary compliance because the bill in fact originally permitted the Attorney General to obtain an injunction after a violation. This lent support for the conclusion already reached that under the applicable rules pertaining to the construction of penal statutes there was no authority to be found for imposing a penalty without doing violence to the rules this court must follow. Thus, an examination of the original roll makes it abundantly clear that the legislature did not intend to impose a penalty for a violation of an assurance of voluntary compliance.

■ However, the Attorney General would confine this court to an examination of the journals and the enrolled bill and cites as authority for that proposition *Bullington v. State*, 459 S.W.2d 334, 338 (Mo. 1970). There is nothing in *Bullington* which prevents this court from examining the original bill. On the contrary, as it appears from *Brannock, Helton* and *Riley* this court is free to examine the original bill in order to construe this statute in an effort to determine the intent of the legislature.

The Attorney General states this court has rewritten this statute by examining the original bill and discovering the renumbering. This court did not rewrite the statute but simply examined the original bill in an effort to determine the legislative intent. The bill remains as it read when passed, but this court has concluded that as written the statute does not reveal the required clear intent to provide for civil penalties for the violation of an assurance of voluntary compliance.

■ The motion further relies on *Riley* for the proposition that courts will accord great weight to an interpretation placed upon a statute by those charged with its administration and states the Attorney General has interpreted § 407.030 to allow penalties. This rule of law is correct, but as

4. The Secretary of State maintains the original roll of all laws under § 2.010.

pointed out in *State ex rel. Danforth v. Riley*, 499 S.W.2d 40, 44[7] (Mo.App.1973) such interpretation is not binding on the court. Here, this court concluded that it could not accept the Attorney General's interpretation. To do so would require a rewriting and construction of this statute which the cases discussed in the opinion hold a court may not do. For that reason, the interpretation placed upon this statute by the Attorney General cannot be accepted.

The motion for rehearing is overruled and the motion to transfer this cause to the Supreme Court is denied.