Dear Mr. O'Hara:
This opinion is in response to your request for an opinion concerning Senate Bill 401, 83rd General Assembly, First Regular Session, Sections 210.150 and 210.800 to 210.837, RSMo Supp. 1985. (All references to the sections of S.B. 401 are made according to the section numbers provided in RSMo Supp. 1985 which differ in some instances from the numbering of the sections in the bill.) As set forth in its title, the bill is "for the purpose of authorizing the screening of child care providers and their employees . . . ." The bill sets up a system of screening child care providers and their employees to determine which of them will be disqualified from serving as providers or employees of providers.
Providers are defined in Section 210.800(5) as follows:
 (5) "Provider" includes licensed day care homes; licensed day care centers; licensed child placing agencies; licensed residential care facilities for children, including group homes; licensed foster family group homes; licensed foster family homes; juvenile courts and other local or state agencies providing or having care or custody of a child for twenty hours or more per week.
In that same section, the bill also provides a definition of employees as follows:
 (4) "Employees" include staff, operators and volunteers who do or will provide care to children directly or indirectly;
The screening of the employees is in reference to the bill's prohibition against the provider employing anyone who has committed certain acts. The prohibition is set forth in Section 210.809 as follows:
 "No provider shall employ any employee who has been determined by the provider or by the division [Family Services] to have committed acts which have been harmful to a child or which demonstrate a likelihood of harm to a child." [Emphasis added]
The underscored phrase is defined at Section 210.800(1) as including two types of acts. First, the phrase includes convictions for offenses designated in subdivision (1); and second, it includes "noncriminal child abuse which resulted in the physical, mental or emotional abuse and neglect, or sexual abuse of a child and which is substantiated and documented by state social workers but not necessarily proven in court;".
The prohibition against employing persons identified in Section 210.809 is not necessarily absolute. The General Assembly has also set up two exemptions in Section 210.805.2 which apply when an employee or potential employee falls within the disqualification set forth in Section 210.809. However, neither of these exemptions is applicable when an employee or potential employee has a conviction for "acts which have been harmful to a child or which demonstrate a likelihood of harm to a child as defined in Section 210.800 of this act." Therefore, the exemptions apply only to those who have committed the "noncriminal child abuse" described in Section 210.800(1). The first exemption is set forth as follows:
 2. After review of the record and before adverse action may be taken by the division [of Family Services], or by an employer or potential employer, the division shall grant an exemption from disqualification for licensure or for employment by a provider unless the division has substantial and convincing evidence to support a reasonable belief that the applicant or employee or potential employee committed the alleged offense.
This provision is not so much an "exemption" as it is a requirement that an employee or potential employee cannot be disqualified from employment until the division has sufficient evidence to support a reasonable belief that the person in question actually committed "the offense".
Once it is determined that an employee or potential employee has committed noncriminal child abuse as described in Section 210.800(1), he must not be allowed in the employ of the provider unless and until the division decides to grant the second type of exemption, the "good character" exemption, which is set forth in the remaining portion of Section 210.805.2. That exemption is established as follows:
 "The division may grant an exemption from disqualification for licensure or for employment by a provider, if the division has substantial and convincing evidence to support a reasonable belief that the applicant or the employee or prospective employee is of such good character as to justify issuance of a license or granting of an exemption pursuant to this section."
The statute then describes the factors which must be considered in determining whether this "good character" exemption should be granted.
Provisions relating to the system by which the information is gathered to screen employees and by which records on such are kept are in Sections 210.150, 210.814 and 210.826. These will be dealt with to the extent necessary to answer your questions later in this opinion.
Providers who violate the provisions of this bill may have their license revoked or be subject to injunctive action. Providers who violate provisions of this bill are also subject to being convicted of a misdemeanor. Section 210.835.3 and .5. Employees who violate this law are subject to conviction for a felony. Section 210.835.1. Finally, the law provides in Section 210.837 an immunity from suit for employers or providers who decline to employ or terminate a person based on the provisions of this law.
Each of the nine questions which you asked is set forth below followed by this office's response.
1. Are hospitals subject to the requirements of S.B. 401?
 2. Are public elementary and secondary schools subject to requirements of S.B. 401?
Whether hospitals and public elementary and secondary schools come within the screening and disqualification requirements of S.B. 401 depends on whether they come within the term "provider". Section 210.800(5) defines "provider" as follows:
 (5) "Provider" includes licensed day care homes; licensed day care centers; licensed child placing agencies; licensed residential care facilities for children, including group homes; licensed foster family group homes; licensed foster family homes; juvenile courts and other local or state agencies providing or having care or custody of a child for twenty hours or more per week. [Emphasis added]
If a provider "knowingly employs a person in violation of Section 210.800 to 210.830" or if a provider "knowingly fails to obtain and maintain the information and records required by Section 210.800 to 210.837" he is guilty of a Class A misdemeanor.See subsections 2 and 3, respectively, of Section 210.835. Therefore, this law must be interpreted under the principles applicable to criminal statutes as those are set forth in State v. McClary, 399 S.W.2d 597, 599 (K.C.App., Mo. 1960):
 Criminal statutes must, indeed, be strictly construed, strictly against the state and liberally in favor of the accused . . . . No person can be made subject to a criminal statute by guesswork or mere implication . . . . "A criminal statute is not to be held to include offenses or persons other than those which are clearly described and provided for both within the spirit and letter of the statute, and, if there is a fair doubt as to whether the act charged and proved is embraced within the prohibition, that doubt will be resolved in favor of the accused." State v. Hall,
Mo.App., 351 S.W.2d 460, 463; State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467, 471.
 Thus a penal statute creating a new offense must be sufficiently clear to inform those sought to be subjected to it just what conduct on their part will render them liable to its penalties. "Statutes and ordinances which fix crimes, or quasi crimes, should so fix them that there can be no uncertainty. They should be so worded that one could read them, and know whether or not he was violating the law." Ex parte Taft, 284 Mo. 531, 544, 225 S.W. 457, 461; Ex parte Hunn, 357 Mo. 256, 207 S.W.2d 468, 470.
 "The reason of the rule (of strict construction) is found in the tenderness of the law for individuals, and on the plain principle that the power of punishment is fixed in the legislature, and not in the judicial department. It is the duty of the legislature, and not the courts, to define a crime, and ordain its punishment." State
v. Reid, 125 Mo. 43, 28 S.W. 172, 173. These rules must prevail even though courts may think that the legislature ought to have made a law more comprehensive and that by failing to do so it failed to accomplish a salutary purpose. [Citations omitted]
A criminal statute may not be so vague "that men of common intelligence must necessarily guess at its meaning and differ as to its application." St. Louis County v. McBride and Son,Inc., 487 S.W.2d 878, 879 (Mo.App., St.L.D. 1972). That a criminal statute must be strictly construed means that it "can be given no broader application than is wanted by its plain and unambiguous terms." City of Charleston v. McCutcheon,360 Mo. 157, 227 S.W.2d 736 (banc 1950).
In addition to these principles, the rule of statutory construction called "ejusdem generis" is also implicated because the legislative intent and language is unclear and because the term "provider" is defined by the listing of specific entities which are followed by general words of description. Hospitals and public elementary and secondary schools are not listed specifically and, therefore, are providers only if they come within the meaning of the phrase "other local or state agencies providing or having care or custody of a child for twenty hours or more per week." Whether they are so included must be decided also under the application of the following principle:
 "`. . . where a statute contains general words only, such general words are to receive a general construction, but, where it enumerates particular classes or things, followed by general words, the general words so used will be applicable only to things of the same general character as those which are specified.'"
State v. Lancaster, 506 S.W.2d 403, 405 (Mo. 1974), quotingMcCaren v. G. S. Robins and Company, 349 Mo. 653, 162 S.W.2d 856
(1942).
The general character of the entities specified in the definition of provider is that they all exist for the primary purpose of providing parental or family type care to children. That character is revealed in the statutory and related rule provisions establishing the licensing and regulation of those entities. For instance, day care homes and day care centers are required to provide a "supplement to parent responsibility for the child's protection, development, and supervision."13 CSR 40-61.010(1) and 13 CSR 40-62.010(1). Residential care facilities, group homes and foster family homes are responsible for providing on a twenty-four hour basis the whole gamut of care for a child's physical, social, emotional, moral and religious needs that typify parental or family type care. See 13 CSR 40-71.070, 72.010(2) and 60.050, respectively. The manifest purpose of these agencies is to take the place of the family, at least temporarily, and provide the child with a family environment.
Child placing agencies share this same concern since they place children into situations which provide a family type of care. 13 CSR 40-73. Juvenile courts exercise similar functions in regard to care of children in their custody and in regard to their disposition or placement of children who come before them.
In contrast, schools and hospitals neither provide this comprehensive family type care not resemble child placing agencies and juvenile courts. They fulfill a much narrower function, schools providing an education and hospitals providing medical care. Neither traditionally provides nor is required by law to provide all those needs of a child covered under the concept of parental or family type care.
Therefore, taking into consideration the rules of strict construction applicable to criminal statutes and the rules applied to interpreting general words following a specific listing in a definition, this office is of the opinion that hospitals and public elementary and secondary schools do not come within the definition of provider and are not subject to the screening and disqualification requirements of S. B. 401.
 3. If public elementary and secondary schools are not subject to the requirements of S.B. 401, may they voluntarily submit to the Division of Family Services (DFS) names of an employee or prospective employee for DFS to conduct a nationwide criminal record review, in accordance with Section 210.826 of S.B. 401, and to screen central registry reports to determine if the individual has committed an "act which has been harmful to a child or which demonstrates a likelihood of harm to a child" [as that term is defined by Section 210.800(1)]?
In response to your question 2, this office determined that public elementary and secondary schools are not subject to the requirements of S.B. 401. Thus, a response to your question 3 is in order. A review of the pertinent sections of S.B. 401 is necessary to formulate a response to this question.
First, Section 210.826 provides:
 For all employees or prospective employees, the division shall conduct a nationwide criminal record review. Each provider shall submit to the division within fourteen days of employment of the prospective employee the name, nicknames, all aliases, date of birth, full residential address, social security number, race, sex and such other information as the division may reasonably require, which may include but is not limited to finger prints. The division shall not charge the provider a fee for conducting a criminal record review pursuant to Sections 210.800 through 210.837, except that the division shall require the provider to reimburse the division for any and all costs of obtaining a criminal record clearance from the Federal Bureau of Investigation if such clearance is determined by the division to be necessary. Any fees received by the division pursuant to this Section shall be deposited in the General Revenue Fund of this state.
This section, by the use of the term "provider", which is defined in Section 210.800(5), contemplates that the nationwide criminal record review will be done on employees or prospective employees of "providers." In response to the first part of your question, then, this service is accessible only to providers. There is no provision in S.B. 401 for those agencies or organizations which wish to voluntarily submit names of employees or prospective employees.
In regard to the second part of your question concerning screening the central registry reports, Section 210.150 provides in pertinent part:
 1. All reports and records made pursuant to sections 210.110 to 210.165 and maintained by the division, its local offices, the central registry, and other appropriate persons, officials, and institutions pursuant to section 210.110 to 210.165 shall be confidential. For the purpose of this section, "subjects" include the child and any parent, guardian, or other person responsible for the child, who is mentioned in a report. "Reporters" include all persons and institutions who report abuse or neglect pursuant to sections 210.110 to 210.165. Information shall not be made available to any individual or institution except to:
* * *
 (6) All licensed day care homes; licensed day care centers; licensed child placing agencies; licensed residential care facilities, including group homes; juvenile courts, public and private elementary schools, public and private secondary schools, and other state agencies providing or having care or custody of a child who shall request an examination of the central registry from the division for all employees and volunteers or prospective employees and volunteers, who do or will provide services or care to children either directly or indirectly. Examinations of the central registry shall be mandated for facilities including, but not limited to, foster homes used by the above agencies or courts for the placement of children. Requests for examinations shall be made to the division director or his designee in writing by the chief administrative officer of the above homes, centers, public and private elementary schools, public and private secondary schools, agencies, or courts. The division shall respond in writing to that officer. The response shall include information pertaining to the nature and disposition of any report or reports of abuse or neglect revealed by the examination of the central registry. This response shall not include any identifying information regarding any person other than the alleged perpetrator of the abuse or neglect; [Emphasis added]
Thus public elementary and secondary schools may request an examination of the central registry for information contained in it.
 4. May exemptions be granted, pursuant to Section 210.805 of Senate Bill 401, to potential employees of the Department of Social Services?
At the outset, it is important to realize that the Department of Social Services is made up of divisions which are legally separate and distinguishable entities in their own right. There are numerous Missouri decisions which have addressed the issue of whether a particular state agency is a legally recognizable entity. See, Parker v. Unemployment CompensationCommission, 358 Mo. 365, 214 S.W.2d 529, 534 (1948); State exrel Highway Commission v. Day, 327 Mo. 122, 35 S.W.2d 37, 39
(banc 1930); State ex rel Goldman v. Missouri Workman'sCompensation Commission, 325 Mo. 153, 27 S.W.2d 1026, 1029
(banc 1930); and State ex rel. Gehr v. The Public ServiceCommission of Missouri, 338 Mo. 177, 90 S.W.2d 390, 394 (1935).
Among the divisions within the Department of Social Services which are clearly separate legal entities, there are the Division of Family Services and the Division of Youth Services. The Division of Family Services is created by statute, Section 207.010, RSMo 1978, and Section 660.010(7), RSMo 1984 Supp. The Division of Family Services has a wide range of powers and responsibilities which lead to its recognition as a separate legal entity. See Section 207.020, RSMo 1984 Supp. The Division of Youth Services is created by Section 219.011, RSMo 1978 and Section 660.010.14, RSMo 1984 Supp. The Division of Youth Services also has a wide range of powers and aspects which indicate that it is a legal entity distinguishable from the Department. See Section 219.016, RSMo 1978. Accordingly, it is this office's opinion that these divisions are distinct entities and considered "state agencies" under the definition of "provider" in Section 210.800(5).
Whether these divisions come within the rest of the definition of "provider" depends on whether they provide or have "care or custody of a child for twenty hours or more per week". As set forth in the answer to questions 1 and 2, above, the principles of strict construction and of ejusdem generis are applicable to this issue. An examination of the statutory duties of these two divisions demonstrates clearly that they are responsible for providing the parental or family type care which characterizes those entities specifically listed in the definition of provider. According to statute, the Divisions of Family Services and Youth Services have programs by which they provide such care or custody. Pursuant to Section 660.010.7, RSMo 1984 Supp., all powers, duties and functions of the old division of welfare were transferred to the Division of Family Services, which is "construed to mean the division of family services of the department of social services." One of the duties and functions of the Division of Family Services is to provide for custody and care of children pursuant to juvenile court decrees. Section 207.020.1(17), RSMo 1984 Supp.
The Division of Youth Services, pursuant to Section 219.021.1, RSMo 1984 Supp., can be awarded the custody of certain minor children. In addition, the Division also provides for the "care" of a child. Section 219.016.2(1), RSMo 1978, provides the Division shall be responsible for "providing for the reception, classification, care, activities . . . of all children committed to the Division;". Additionally, pursuant to Section 219.021.7, RSMo 1984 Supp., the Division of Youth Services operates facilities where the minor children actually live.
Clearly, these divisions are "state agencies" which have programs "providing or having care or custody of a child for twenty hours or more per week." Therefore, they are providers under Section 210.800(5).
As providers, then, the divisions are bound by Section 210.809 not to employ anyone who has been determined to have committed acts which have been harmful to a child or which demonstrate a likelihood of harm to a child. However, there are two "exemptions" to this prohibition provided for in Section 210.805.2. That subsection provides in part as follows: ". . . The Division shall grant an exemption from disqualification for licensure or for employment by a provider unless . . . . The division may grant an exemption from disqualification for licensure or for employment by a provider, if the division . . . ." [Emphasis added]
It is important to remember that a principle of statutory construction is that every word and phrase must be given some meaning, if possible. Union Electric Company v. Morris,359 Mo. 564, 322 S.W.2d 767 (1949). The General Assembly provides that an exemption could be granted in the case of a "disqualification for licensure or for employment by a provider". The use of the word "or" is a disjunctive and ordinarily means "either".Norberg v. Montgomery, 351 Mo. 180, 173 S.W.2d 387 (1943) and Dodd v. Independent Stove and Furnace Company,330 Mo. 662, 51 S.W.2d 114 (1932).
Applying the ordinary definition to the term "or", it becomes obvious that an exemption is not limited only to a applicant for a license, because the provisions reference "the applicant or the employee or potential employee".
Therefore, it is the opinion of this office that, since these exemptions are from disqualifications for employment "by providers", they may be granted to prospective employees of those divisions within the Department of Social Services which are providers. Of course, the prohibition in Section 210.805.4 against granting exemptions to those who have been convicted for certain types of offenses applies also to prospective employees of these divisions.
 5. Does Senate Bill 401 apply to the Division of Youth Services/Department of Social Services (DYS/DOSS) employees who are never in contact with clients?
The answer to this question depends on whether the Division of Youth Services is a "provider" and, if so, whether the employees concerned come within the definition of "employees" contained in Section 210.800(4). The first issue is answered affirmatively in the answer to question 4. The second issue can be addressed only in reference to the following definition of "employees" contained in Section 210.800(4):
 (4) "Employees" include staff, operators and volunteers who do or will provide care to children directly or indirectly;"
The coverage of S.B. 401 is not limited to those Division of Youth Services employees who are actually in physical contact with the minor children. The use of the word "or" is a disjunctive which generally means "either". See Dodd v. IndependentStove and Furnace Company, supra, and Norbert v. Montgomery,supra. The meaning of "directly or indirectly" has been defined in Rust v. Missouri Dental Board, 348 Mo. 616,155 S.W.2d 80, 83 (banc 1941). The court defined "indirectly" as "not directly, obliquely, in a roundabout way . . ." Additionally,Black's Law Dictionary, Fourth Edition, 1968, defines "indirect" as "not direct in relation or connection; not having an immediate bearing or application . . ." Therefore, S.B. 401 is applicable to employees who are never in contact with client children if these employees "do or will provide care to [these] children . . . indirectly." This could certainly include support and supervisory personnel.
Any other interpretation of S. B. 401 would lead to an absurd result. It is entirely unreasonable to assume that the General Assembly would have passed a law which would require a social worker, who has direct contact with a child, to be affected by the employee screening and disqualification procedures, but make no such requirement for the social worker's supervisor or the support staff. The social worker's supervisor directs the actions of the social worker and does have access to the Division of Youth Services' facilities where the minor children actually live. Likewise, the support staff also have access to the Division of Youth Services' facilities and they work closely with the social worker in providing care to the minor children entrusted to the Division. It is a principle of statutory construction that the General Assembly is presumed to have intended a logical and reasonable result, not an absurd one. Breeze v.Goldberg, 595 S.W.2d 381 (Mo.App., W.D. 1980) and ArtophonePhone Corp. v. Coale, 345 Mo. 344, 133 S.W.2d 343 (1939).
Therefore, it is the opinion of this office that those provisions of S.B. 401 which are applicable to employees of providers are meant to be applicable to those employees of the Division of Youth Services which "do or will provide care to children directly or indirectly" and that depending on the facts and circumstances those employees who have no actual contact with client children may come within that definition.
 6. Is the Department of Social Services and its various divisions immune from liability for discrimination under Title VII of the Civil Rights Act for actions taken pursuant to S.B. 401?
It is not appropriate for this office to issue official opinions on whether certain immunities or defenses would be available in litigation. Our official opinion would serve no purpose because the issue is one exclusively for a court to decide.
 7. During the period of time the Division of Family Services (DFS) is determining whether an exemption should be granted to an employee pursuant to Section 210.805.2, may the employee be terminated or placed on administrative leave?
 If the answer is "yes", is such termination or leave mandatory?
As described earlier, Section 210.805.2 provides for two types of exemptions from disqualification for employment. Section 210.805.4 prohibits the granting of any of these exemptions to a person who has a conviction for "acts which have been harmful to a child or which demonstrates [sic] a likelihood of harm to a child as defined in Section 210.800 of this act." Therefore, the exemptions may be granted only to those employees or potential employees who have committed noncriminal child abuse as described in Section 210.800(1). According to the first sentence of Section 210.805.2 which sets forth the first of the "exemptions", such employees or potential employees are exempt from "disqualification . . . for employment" "[a] after a review of the [criminal] record and before adverse action may be taken by the division, or by an employer or potential employer. . . ." This exemption continues until the division has "substantial and convincing evidence to support a reasonable belief that the applicant or employee or potential employee committed the alleged offense." Only then may "adverse action" in the form of "disqualification . . . for employment" occur. "Termination" is obviously such an "adverse action" and, therefore, cannot occur until the division has the requisite evidence.
Whether an employee can be put on administrative leave after the criminal review is finished and before the above determination is made by the division depends on whether the administrative leave constitutes "adverse action" or "disqualification for employment". If it does constitute such, the administrative leave cannot be forced upon the employee. However, a more specific answer cannot be provided in the abstract because the answer would depend on the specific terms of the administrative leave and on the facts peculiar to each situation.
The second, or "good character", exemption comes into consideration once it is determined that an employee or potential employee has committed noncriminal child abuse as described in Section 210.800(1). Section 210.809 makes mandatory the denial of employment to such an individual. Therefore, he must not be allowed in the employ of the provider unless and until the division decides to grant the "good character" exemption which is set forth in the second and following sentence of Section 210.805.2. There is no language, as there was in the case of the first exemption, requiring that the good character exemption be granted before "adverse action" or "disqualification for employment" occurs. The removal of such an employee from the employ of the provider appears consistent with the fact that the investigation and decision-making process on whether this exemption should be granted could be a lengthy one given the number and type of factors which the statute requires be taken into consideration.
Since the affected employee or potential employee may return to work if he is granted the good character exemption, there arises a question of whether during the time that the applicability of the exemption is being determined his job must be completely terminated or whether he may be put on some type of "administrative leave". Section 210.809 is clear that a provider may not "employ" such a person as an "employee". The term "employees" is defined in Section 210.800(4) to "include staff, operators and volunteers who do or will provide care to children directly or indirectly". As long as the person who is disqualified from employment does not fall within that definition, the provider is in compliance with Section 210.809. Whether the provider fires the person or sends him home with or without pay or takes any other action, as long as the consequence is that the disqualified person no longer comes within the definition of employees, the provisions of Section 210.809 are complied with.
Therefore, it is the opinion of this office that, in regard to the first exemption in Section 210.805.2, the employee cannot be terminated from employment or have any other adverse action taken against him pursuant to Section 210.809 until the Division has the evidence required under Section 210.805.2. Furthermore, it is the opinion of this office that, in regard to the good character exemption, the provider has no choice but to take whatever action necessary to place the disqualified employee outside the scope of the definition of "employees" found in Section 210.800(4) until the good character exemption is granted.
 8. In the case of licensed day care homes, do the provisions of Senate Bill 401 apply only to the licensed provider or do they extend to other household members living in the home?
Licensed day care homes are included within the definition of "provider", Section 210.800(5). Therefore, the task is to ascertain the extent of S.B. 401's coverage for a licensed day care home. Section 210.805.1 requires that the applicant for a license is within the coverage of S.B. 401. If the applicant is not an individual, then the chief executive officer or his equivalent shall be subject to coverage.
Additionally, all employees of a licensed day care home are covered by S.B. 401. Section 210.809 prohibits providers from employing any employee who has been determined to have committed certain acts harmful to the children. Section 210.826 also requires each provider to submit to the Division of Family Services data on each of their employees. S.B. 401 also provides a definition of "employees", namely, "staff, operators and volunteers who do or will provide care to children directly or indirectly". Section 210.800(4).
Unless, the household member living in the licensed day care home provided either direct or indirect care to the children, the provisions of S.B. 401 would not apply to him. The General Assembly has seen fit to limit the coverage of S.B. 401 by providing a definition of employees, Section 210.800(4), and of providers, Section 210.800(5). The definition of "employees" expressly refers to several classes of individuals. The definition of "provider" also expressly refers to certain classes of business entities and associations. The principle of statutory construction applicable here is that the express mention of one thing in the statute implies the exclusion of another. Harrison
v. M.F.A. Mutual Insurance Company, 607 S.W.2d 137 (Mo. 1980). Where a statute enumerates the subjects upon which it operates, it is to be construed as excluding from its effect all those that are not expressly mentioned. Giloti v. Hamm-SingerCorp., 396 S.W.2d 711 (Mo. 1965).
The rationale for such a rule of statutory construction was set forth in Bauer v. Rutter, 256 S.W.2d 294 (St.L. Ct.App. 1953). The Court of Appeals reasoned that significance must be attached to every word in a statute or else some words will be without effect, and where there are limitations expressed in an act, a court will exclude all others so that the indicated purpose of the legislature is not defeated. Therefore, unless the household member is the applicant for licensure or provides directly or indirectly for the care of children, he is not within the coverage of S.B. 401.
 9. Does Senate Bill 401 relieve the Division of Family Services of the responsibility of following its own administrative rule regarding referral to the State Day Care Review Board or day care facilities in which abuse/neglect was substantiated?
The administrative rule which refers to the State Day Care Review Board is 13 CSR 40-62.041. The Day Care Licensing Review Board was reestablished pursuant to Section 207.020.11, RSMo 1978, which allows the Director of the Division of Family Services to appoint advisory committees. The licensing of child care centers is in Section 210.021 through .245, RSMo 1984 Supp. S.B. 401 does not refer to either 13 CSR 40-62.041 or Section 210.201 through .245.
The only provision in S.B. 401 which relates to the revocation of of a day care center's license is Section 210.830.2, which provides in part "if the division finds that a provider is in violation . . . it may seek, among other remedies, revocation of any license issued by the division . . ." Additionally, Section 210.830.1 allows the division to adopt rules necessary for the implementation of S.B. 401. No part of these provisions of S.B. 401 repeals or conflicts with 13 CSR 40-62.041. Therefore, the Division of Family Services is required to follow its own rules and regulations, and the exceptions to the regulations which are contained therein.
CONCLUSION
It is the opinion of this office concerning the screening of employees and potential employees of child care providers (S.B. 401, 83rd General Assembly, Sections 210.150 and 210.800 to 210.837, RSMo Supp. 1985) that hospitals and public schools do not come within the definition of "provider" and are not subject to the screening and disqualification requirements; a nationwide criminal review will be done on employees of providers; public elementary and secondary schools may request examinations of the central registry; exemptions may be granted to the employees of the divisions of Youth Services and Family Services; the screening and disqualification requirements apply to those employees of the Division of Youth Services who come within the definition of employees even though they have no actual contact with client children; whether an employee may be terminated or placed on administrative leave while the Division of Family Services is determining the granting of exemptions depends on which exemption is being considered; in the case of licensed day care homes the provisions of S. B. 401 do not apply to members of the household living in the home unless they come within the definition of employees; and, S. B. 401 does not relieve the Division of Family Services of the responsibility of following its own administrative rule regarding referrals to the State Day Care Review Board.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General